[This opinion has been published in *Ohio Official Reports* at 80 Ohio St.3d 335.]

THE STATE EX REL. WHITE, APPELLEE, *v*. JUNKIN, JUDGE, ET AL., APPELLANTS.

[Cite as *State ex rel. White v. Junkin*, 1997-Ohio-340.]

*Prohibition—Writ prohibiting judge or any other judicial official from vacating a disorderly conduct conviction and sentence and from proceeding on the original charge of domestic violence—Writ denied, when—Ruling written on a case file jacket and posted on computerized court docket is not a final judgment.*

(No. 97-202—Submitted September 9, 1997—Decided November 26, 1997.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 71510.

_____

{¶ 1} Relator-appellee, Anthony White, was charged in Bedford Municipal Court with domestic violence, a misdemeanor offense. On September 30, 1996, the case came on for trial before Judge David E. Griffiths. Upon motion of the prosecutor, the charge was amended to disorderly conduct. After conducting a short hearing, Judge Griffiths accepted White's no contest plea and found him guilty. Judge Griffiths sentenced White to ten days in jail, suspended, and fined him $100 plus court costs. Judge Griffiths recorded his oral decision on White's case file jacket and initialed the decision.

{¶ 2} White and his attorney then accompanied a court officer to the clerk's office. White was ordered to pay the $100 fine and $83.55 in court costs, which he did. An official in the clerk's office entered Judge Griffiths's case file notations in the computerized docket system.

{¶ 3} On October 1, 1996, the next day, Judge Griffiths issued a journal entry vacating his September 30, 1996 ruling. Judge Griffiths set December 9, 1996 as the trial date for White's case on the original charge of domestic violence, and

ordered that the fine and costs be refunded. The September 30, 1996 ruling was crossed out on the case file jacket and a refund check was sent to White.

{¶ 4} In response to Judge Griffiths's latest action, White filed a complaint for a writ of prohibition in the Court of Appeals for Cuyahoga County. White wants to prevent respondents-appellants, Bedford Municipal Court Judge Junkin (the original judge assigned to his case), Judge Griffiths, or any other judicial officer, from vacating the September 30, 1996 disorderly conduct conviction and sentence and from proceeding on the original charge of domestic violence. After answering the complaint, appellants filed a motion to dismiss. The court of appeals denied the motion and issued the writ in prohibition.

{¶ 5} The cause is now before this court upon an appeal as of right.

————————————

*Kabat, Mielziner, Sobel & Janice*, *Bruce L. Mielziner* and *Christina M. Janice*, for appellee.

*Melling, Melling & Bell, Brian J. Melling* and *Clarence B. Rader III*, for appellants.

————————————

**FRANCIS E. SWEENEY, SR., J.**

{¶ 6} In order to determine whether a writ of prohibition is warranted in this case, we must decide whether a ruling written on a case file jacket and posted on the computerized court docket is a final judgment. Because we find that it is not, we reverse the court of appeals and deny the writ.

{¶ 7} A writ of prohibition is an extraordinary writ that is not routinely or easily granted. *State ex rel. Barclays Bank PLC v. Hamilton Cty. Court of Common Pleas* (1996), 74 Ohio St.3d 536, 660 N.E.2d 458. In order to be entitled to a writ of prohibition, a relator must establish that (1) the court or officers against whom it is sought are about to exercise judicial power, (2) the exercise of such power is unauthorized by law, and (3) denial of the writ will cause injury to relator for which

no other adequate remedy in the ordinary course of law exists. *State ex rel. Jones v. Garfield Hts. Mun. Court* (1997), 77 Ohio St.3d 447, 448, 674 N.E.2d 1381, 1382. It is undisputed that Judge Griffiths was about to try White on the original charge of domestic violence at the time White sought the writ of prohibition. Thus, the dispute centers on the second and third requirements.

{¶ 8} It has been held that, absent a patent and unambiguous lack of jurisdiction, a court having general subject-matter jurisdiction can determine its own jurisdiction, and a party challenging the court's jurisdiction possesses an adequate remedy by appeal. *State ex rel. Enyart v. O'Neill* (1995), 71 Ohio St.3d 655, 656, 646 N.E.2d 1110, 1112. However, if a lower court patently and unambiguously lacks jurisdiction over the cause, prohibition will issue to prevent any future unauthorized exercise of jurisdiction and to correct the results of prior jurisdictionally unauthorized actions. *State ex rel. Fraternal Order of Police, Ohio Labor Council, Inc. v. Franklin Cty. Court of Common Pleas* (1996), 76 Ohio St.3d 287, 289, 667 N.E.2d 929, 931.

{¶ 9} Appellants assert that the municipal judge properly vacated his prior decision convicting and sentencing White on the amended charge of disorderly conduct, since that decision was never journalized. We agree.

{¶ 10} Crim.R. 32(B) provides:

"A judgment of conviction shall set forth the plea, the verdict or findings, and the sentence. If the defendant is found not guilty or for any other reason is entitled to be discharged, the court shall render judgment accordingly. The judge shall sign the judgment and the clerk shall enter it on the journal. *A judgment is effective only when entered on the journal by the clerk.*" (Emphasis added.)

{¶ 11} Crim.R. 32(B) reflects the axiom that " '[a] court of record speaks only through its journal and not by oral pronouncement or mere written minute or memorandum.' " *State ex rel. Hanley v. Roberts* (1985), 17 Ohio St.3d 1, 4, 17

OBR 1, 3, 476 N.E.2d 1019, 1022, quoting *Schenley v. Kauth* (1953), 160 Ohio St. 109, 51 O.O. 30, 113 N.E.2d 625, paragraph one of the syllabus.

{¶ 12} Lower court decisions construing Crim.R. 32(B) or its counterpart in the Civil Rules, Civ.R. 58(B) ("A judgment is effective only when entered by the clerk upon the journal"), have held that an entry is effective only when journalized or filed with the clerk for journalization, under earlier versions of the rules. *State v. Ellington* (1987), 36 Ohio App.3d 76, 77-78, 521 N.E.2d 504, 506. Furthermore, "handwritten 'notations' by a municipal judge on a case file-envelope or case jacket do not rise to the dignity and finality of a 'judgment' from which an appeal will lie, *in the absence of evidence that it has been filed with the clerk of the trial court.*" (Emphasis *sic.*) *William Cherry Trust v. Hofmann* (1985), 22 Ohio App.3d 100, 105, 22 OBR 288, 293, 489 N.E.2d 832, 836-837. Finally, "[r]egardless of the trial court's intention, however, the [docket] form is still insufficient under Crim.R. 32[B] because it bears no time stamp or other indication that it was entered on the trial court's journal by the clerk." *State v. Ginocchio* (1987), 38 Ohio App.3d 105, 106, 526 N.E.2d 1366, 1367.

{¶ 13} The clerk's placement of information from the September 30, 1996 decision on the computerized docket was not tantamount to journalization of the decision. Dockets and journals are distinct records kept by clerks. See R.C. 2303.12 ("The clerk of court of common pleas shall keep at least four books[:] * * * the appearance docket, trial docket * * *, journal, and execution docket."); see, also, R.C. 1901.31(E). A docket is not the same as a journal. *Lima v. Elliot* (1964), 6 Ohio App.2d 243, 245-246, 35 O.O.2d 427, 429, 217 N.E.2d 878, 881.

{¶ 14} Thus, the undisputed evidence establishes that the September 30, 1996 file entry was never journalized by the clerk. Since this decision was never journalized, appellants did not patently and unambiguously lack jurisdiction to vacate that decision and proceed on the original charge of domestic violence.

{¶ 15} In granting the writ of prohibition, the court of appeals misconstrued *State ex rel. Hansen v. Reed* (1992), 63 Ohio St.3d 597, 589 N.E.2d 1324. In *Hansen,* we recognized that trial courts lack authority to reconsider their own valid final judgments in criminal cases. But *Hansen,* which also involved a case file notation by a Bedford Municipal Court judge, held that in the absence of formal journalization of the decision, the municipal court possessed authority to review and reverse its previous decision. 63 Ohio St.3d at 600, 589 N.E.2d at 1327. Hence, *Hansen* actually supports a reversal in this case.

{¶ 16} White also contends that appellants patently and unambiguously lack jurisdiction to vacate the September 30, 1996 decision to try him on the original charge of domestic violence because the double jeopardy provisions of the United States and Ohio Constitutions preclude these actions. White points out that he already served the September 30th sentence for his disorderly conduct conviction by paying the fines and costs that day. We also reject this argument.

{¶ 17} In *Wenzel v. Enright* (1993), 68 Ohio St.3d 63, 623 N.E.2d 69, paragraph one of the syllabus, we expressly held that "[t]he decision of a trial court denying a motion to dismiss on the ground of double jeopardy is not a final appealable order, and is not subject to judicial review through an action in habeas corpus or prohibition, or any other action or proceeding invoking the original jurisdiction of an appellate court." The decision in *Wenzel* went on to note that "none of the five extraordinary writs seems applicable in a situation where an accused seeks to avoid trial based upon claims of double jeopardy." *Id.* at 66, 623 N.E.2d at 72. Such claims must instead be raised by "direct appeal to the court of appeals at the conclusion of the trial court proceedings." *Id.* at paragraph two of the syllabus. Therefore, based on *Wenzel*, White has adequate legal remedies to raise his double jeopardy contentions by a pretrial motion to dismiss, and if it is denied and he is subsequently convicted, by direct appeal.

{¶ 18} Finally, White can raise any contention of improper admission of evidence based on the purported violation of his privilege against self-incrimination on direct appeal following final judgment.

{¶ 19} Accordingly, we hold that appellants do not patently and unambiguously lack jurisdiction to vacate the unjournalized decision and proceed with a trial on the domestic violence charge. We reverse the judgment of the court of appeals and deny the writ.

*Judgment reversed*
*and writ denied.*

MOYER, C.J., RESNICK, PFEIFER and COOK, JJ., concur.

DOUGLAS and LUNDBERG STRATTON, JJ., dissent separately.

_____

**LUNDBERG STRATTON, J., dissenting.**

{¶ 20} I respectfully dissent. I would affirm the judgment of the court of appeals that the facts in this case establish that White was entitled to a writ of prohibition.

{¶ 21} Judge Griffiths did not vacate White's sentence until the sentence had been executed, *i.e.*, White had paid the fine and court costs and "served" his sentence. The majority determines that Judge Griffiths's vacation of White's judgment was valid on the basis that no entry had yet been journalized. I do not dispute that our previous holdings require a judgment to be journalized before it becomes final. While journalization promotes a universal determination of finality with regard to judgments, this technical requirement runs afoul of the administration of justice and the United States and Ohio Constitutions in this specific case.

{¶ 22} In this matter, the court of appeals found that on September 30, 1996, "[r]espondent [Judge Griffiths] unmistakably entered his judgment and sentence upon the relator's [White's] case file jacket and affixed his signature below the

judgment and sentence. The disposition as entered upon the relator's case file docket was unequivocally intended to be a judgment. In addition, the Clerk of the Bedford Municipal Court did enter the judgment and sentence upon the computerized docket as employed by the Bedford Municipal Court. Finally, the relator paid his fine and court costs in full and thus possessed a right to expect finality with regard to his criminal matter." (Citations omitted.)

{¶ 23} White was escorted by a court officer to the clerk's office and was not permitted to leave custody until he paid his fine and costs. The officer advised White's attorney that White would be incarcerated if he could not pay the costs immediately.

{¶ 24} On October 1, 1996, Judge Griffiths *sua sponte* vacated his order by a journal entry, giving no basis or explanation for his reversal. The entry also ordered that the costs and fine be refunded to White.

{¶ 25} To permit a judge to pass judgment on a defendant, to sentence the defendant, to provide for the sentence to be executed, and then subsequently to vacate the otherwise valid judgment so as to allow retrial of the defendant on the same offense violates the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution by placing the defendant in double jeopardy. A defendant should not be penalized by the court's and clerk's failure to properly finalize their respective duties. Moreover, there is no statutory authority for a judge to vacate a judgment where the sentence *has been executed*. Finally, public policy and principles of justice dictate against such an unfair result because it may subject a defendant to multiple punishment for the same crime. In essence, a court should be estopped from vacating an otherwise valid judgment and sentence *once sentence has been executed*.

{¶ 26} Although White was refunded his $100 fine and court costs, the rule of law established by this case can work a harsh result on someone who has already served his or her time, since a court cannot refund time.

**{¶ 27}** While journalization of judgments for purposes of finality is important, finality must be balanced against the fair administration of justice.

**{¶ 28}** Therefore, I would hold that in the narrow instance where a defendant has served his or her sentence, it is unlawful for a judge to vacate the judgment on the basis that the judgment was not journalized. I would find an exception to the cases cited by the majority on journalization and hold that a sentence becomes final and double jeopardy attaches once the defendant has served his or her sentence.

**{¶ 29}** I would further find that White has no adequate remedy in the ordinary course of law. If the first judgment and sentence were never journalized, White could not perfect an appeal. Further, White could be subject to incarceration for a second time for the same crime before his appeal could be heard. Even a successful appeal cannot refund time.

**{¶ 30}** Therefore, I would find that constitutional prohibitions, as well as a lack of statutory authority, dictate that the trial court patently and unambiguously lacked jurisdiction to vacate the defendant's judgment and sentence so as to allow retrial of the defendant for the same offense. I would further find that such a defendant has no adequate remedy in the ordinary course of law if a writ of prohibition would be denied. In *Ohio Dept. of Adm. Serv., Office of Collective Bargaining v. State Emp. Relations Bd.* (1990), 54 Ohio St. 3d 48, 53, 562 N.E. 2d 125, 130, this court held that where a trial court patently and unambiguously lacks jurisdiction to consider a matter, a writ of prohibition will issue to prevent the assumption of jurisdiction. Accordingly, I would find that the facts in this case establish that White is entitled to a writ of prohibition. Therefore, I respectfully dissent and would affirm the court of appeals.

_____