JOURNAL ENTRY AND OPINION
Defendant-appellant Richard Hlavsa appeals from his conviction for child endangering in violation of R.C. 2919.22, a felony of the third degree, and obstruction of justice in violation of R.C. 2921.32, a misdemeanor of the first degree. After entering a plea of guilty, the appellant was sentenced to a term of incarceration for three years for child endangering at the Lorain Correctional Institution. A concurrent term of six months incarceration in the Cuyahoga County Jail was imposed for obstruction of justice.
The record reveals that Michelle and Lawrence Clark were the parents of Lawrence Clark. On November 19, 1998, Lawrence, then 55 days old, was found dead. The Clarks resided with Richard Hlavsa, the father of Michelle Clark. Mary Hlavsa, Richard's wife and Michelle Clark's mother, was also indicted, although she did not live in the same house.
Richard Hlavsa was originally charged with three counts of endangering children: a) one count for the harm to Lawrence Clark; b) one count for abuse to Kyle Hlavsa, dob 8/5/93; and, c) one count for abuse to Andre Hlavsa, dob 6/8/95. The appellant was also charged with involuntary manslaughter, failure to report a crime, and obstruction of justice knowing or having reason to believe that the crime committed was aggravated murder, murder or a felony of the first or second degree.
A plea agreement was reached with all four defendants, such that each was permitted to enter a plea to some of the charges brought against them individually, but that each defendant must accept the plea or trial would commence against all four. All four defendants pled guilty. The appellant pled to one count of child endangerment (Lawrence) and obstruction of justice. Counsel for Richard Hlavsa began the plea hearing with a motion to permit his client to determine whether to accept the plea offer or proceed to trial without having to consider the package deal offered to all four defendants. Counsel argued that such a package deal was unconstitutional. The court overruled the motion.
The court proceeded with the plea hearing and informed each defendant, including the appellant, of their constitutional rights. The appellant was informed of the possible sentences and fines, including the possibility of post-release control by the parole board. The appellant answered in the affirmative when asked a series of questions by the court. The appellant stated that he was satisfied with his counsel; that no promises or inducements were made to enter the plea; that no threats were made; that he understood that no one could make promises to him as to his sentence; that the pleas were voluntarily made of his own free will; and that he understood the nature of the charges against him and his constitutional rights. The trial court accepted the plea of the appellant to one count of child endangering and to obstruction of justice with the clause removed as to aggravated murder, murder, etc. The court then nolled the remaining counts against the appellant.
After accepting the pleas of all of the defendants, the court informed them that it was sending them to probation for a presentence report. The appellant and his co-defendants were advised to be open, honest and cooperative, as the court set great store by the report of the probation department.
On October 14, 1999, the court reconvened for sentencing. Ms. Jennifer Zisk, who is the Cuyahoga County Department of Children and Family Services (CCDCFS) social worker assigned to this case, addressed the court on behalf of the three children. Ms. Zisk recited from the coroner's report and stated that Lawrence Clark had marks and wounds consisting of contusions of the head, neck, and lower extremity, abrasions of the head, neck, and trunk, lacerations to the head and other injuries and fractures in various stages of healing. The child died from asphyxia by cervical compression, sustained when left unattended in a child seat. The child had also suffered blunt impacts to the head and left upper extremity as a result of an assault. The death was homicidal in nature.
Ms. Zisk stated that Lawrence lived a short life during which time he endured a tremendous amount of brutal, inhumane and ultimately fatal injuries. As a result of Lawrence's death, the other two children were immediately removed from the home. At the time of the removal, the Board of Health found the home to be deplorable and a potential health hazard due to inoperable toilets, lack of running water, and urine soaked walls, floors and bedding. There was a large accumulation of trash throughout the kitchen and a minimal amount of edible food. In the children's sleeping area there was trash, dirty clothing and a hook and eye lock on the outside of the door, indicating the children may have been locked in their room for periods of time. The molding around the door was scratched and tampered with as though the children had attempted to escape from their confinement. There were no toys in the children's room.
The Hlavsa/Clark family had an extensive history with CCDCFS, other counties and other states. Ms. Zisk stated that when Kyle was an infant, Mrs. Clark maintained that she had been raped. The medical reports from MetroHealth Medical Center express concern that Mrs. Clark may have possessed a death instinct towards Kyle because she dropped him on his head several times and refused to keep him on his heart apnea monitor. There was no compliance with recommendations for psychotherapy and the family denied that there was a problem. Shortly after Andrea was born, Mrs. Clark called the hospital and stated that she would not care for or feed the baby. She admitted to feeding the child inappropriately. The family minimally complied with CCDCFS and had an evasive attitude. Kyle and Andrea are now doing well in foster care and Kyle has expressed that he does not wish to live with his mother.
Ms. Zisk concluded by stating that the family minimally complies with CCDCFS services and maintains that those services are not necessary. A case plan was developed in January of 1999 and only two of the fourteen objectives have been completed. Mrs. Clark has attended only two parent-education classes and Mr. Clark has attended only one. The family continues to maintain that Lawrence Clark died of natural causes. This is unsettling, considering the severity of the injuries the child endured. Ms. Zisk expressed on behalf of CCDCFS a concern regarding the ability of the Hlavsa/Clark family to protect any child in their care, especially in light of the denial of problems and the lack of remorse expressed by the family.
The court next indicated to the prosecutor that the coroner's report should be read into the record. When commenting on the visible injuries to Lawrence, the prosecutor indicated that Richard Hlavsa stated that he did not have his glasses on. The prosecutor continued by stating that when human service agencies have been involved, the family circles the wagons instead of attempting to correct the problems. This is how the family responded to the charges in this case. Richard Hlavsa was found by the probation department to exert control over his family and, as one of the adults in the household, he was aware of the abuse and did nothing to intercede.
The sentencing of the Clarks and of Mrs. Hlavsa was uneventful. However, the court and appellant's counsel did not agree as to how much information counsel was permitted to place in the record. When asked by the court if there were deletions or corrections to the probation report, counsel responded that the report was not substantially correct, but rather was a lot of oponionation (sic) by various agencies and police departments involved in this case. (T. 73.) Counsel then attempted to place on the record the appellant's explanation for the child's death and injuries. The trial court asked counsel to limit his remarks (T. 74). Counsel continued his explanation and the court stated that it was not taking testimony. Counsel made it clear that he was attempting to respond to the prosecutor's remarks. The court informed counsel that it had been involved in the case since day one and that he was not arguing the case in front of the appellate court. Counsel continued with his explanations and the court continued to direct counsel to move on. Eventually, the court just permitted counsel to proceed, including a statement that the child's doctor informed the Clarks that the child should be kept in a seated position and that a car seat was acceptable.
The following colloquy occurred:
THE COURT: Thank you, Attorney Carlin.
MR. CARLIN: I'm not finished, Your Honor.
THE COURT: Well, Attorney Carlin, you are finished.
 MR. CARLIN: You gave them 15 minutes. You didn't give me 15 minutes.
 THE COURT: You've had more than enough time, Mr. Carlin. We are not going to rehash this case, nor are we going to argue what your client has to say. You are out of order.
MR. CARLIN: Judge.
 THE COURT: Mr. Hlavsa, do you have anything to say before this Court passes judgment in this case?
 MR. HLAVSA: Yes, I do, ma'am. I did not control my children. I gave them every opportunity to be independent on their own. I did open my door to her. She didn't have a place to go. I had no — I mean, I've been — my family's been devastated financially, as well as everything else, and I just — you know, the circumstances happened the way they have, but I just want to, you know, get this behind me and go on. I really am not able to deal with things on a daily basis like that.
(T. 85).
Counsel objected to the court's failure to allow him to make a full rebuttal statement. Counsel made one more statement regarding the facts of the case. The court then proceeded to sentencing and, after finding that there were no mitigating factors, sentenced Richard Hlavsa.
Although the record indicates that the plea was taken on August 16, 1999, it was not journalized until October 1, 1999. The first sentencing occurred on October 14, 1999, and the order was journalized on October 22, 1999. In an order made on October 18, 1999, but not journalized until October 27, 1999, the court vacated its sentence due to technical omissions. The appellant filed a motion to vacate his plea on October 20, 1999. Also on October 27, 1999, the court's order resentencing the appellant was journalized. The resentencing order imposed the same terms of incarceration.
At the resentencing hearing, the court denied the motion to vacate the plea. The court stated that in the first sentencing it omitted to inform the appellant that he would be subject to post-release control. The court imposed the original sentence and then informed the appellant that the parole board could extend his prison term for offenses committed while incarcerated.
At the conclusion of the resentencing, counsel for appellant asked to place something on the record. The court denied the request. The transcript then indicates that counsel, outside the presence of the court, began to proffer into the record a statement regarding the motion to vacate the plea. The Judge entered the courtroom and stated:
 THE COURT: Mr. Carlin, I told you that you were not permitted to place anything on the record.
MR. CARLIN: I would like this to be on the record.
 THE COURT: Okay, put this on the record. Attorney Carlin knows that this sentence was vacated with respect to a technical omission that's in the journal entry. I said there is no change in the length of the sentence, and what you have done
MR. CARLIN: Judge, I made a motion —
 THE COURT: And what you have done, that you went, as you did at the sentencing, was to try this case. Now you know, and I know, that at the time of the plea, all the ramifications of Senate Bill 2 were explained to your client, and I said and your motion to vacate is denied on the basis of the
 MR. CARLIN: I just wanted to put on the record that they were filed yesterday.
 THE COURT: I told you there was nothing to go on the record.
MR. CARLIN: You can't deny my
THE COURT: You are out of order, Mr. Carlin.
MR. CARLIN: You can't deny my bystander's bill.
THE COURT: File your motion.
 MR. CARLIN: I did file two motions. You wouldn't let me make a record on it.
 THE COURT: I told you why it was not necessary, because the plea was the sentence was vacated.
 MR. CARLIN: Also to make a record for the Court of Appeals. Don't you want the Court of Appeals to review your work here? I asked you to recuse yourself because I know that this Court is prejudiced against me and my client.
 THE COURT: On the contrary, this Court and every attorney in this case will tell you how this Court bent over backwards to benefit you.
 MR. CARLIN: I think you are abusing your discretion in not allowing me to make a record, in all due deference. That's all.
 THE COURT: You have had more than your time on this case.
 MR. CARLIN: Okay. Fine. You denied me again. Thank you.
(T. 107-110).
In the trial court's final journalized order regarding sentencing, the court imposed a prison term of three years for child endangering with three years of post-release control and six months, concurrent, for obstructing justice.
The appellant sets forth four assignments of error. The first and third assignments of error will be considered together as they concern similar issues of law.
The first assignment of error:
 THE TRIAL COURT ERRED BY ACCEPTING AN INVALID PLEA OF GUILTY.
The appellant's third assignment of error:
 THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED APPELLANT'S MOTION TO VACATE PLEA PRIOR TO SENTENCING AND IN FAILING TO CONDUCT A HEARING ON SAID MOTION AND IN FAILING TO GIVE FULL AND FAIR CONSIDERATION OF THE REQUEST.
In the first assignment of error, the appellant sets forth a variety of arguments in a rather convoluted manner, but essentially argues that the trial court erred in accepting an invalid plea and in failing to hold a hearing on the motion to withdrawal the guilty plea.[1] In the third assignment of error, the appellant asserts that the trial court erred in failing to conduct a hearing on the motion to vacate the plea. The appellant argues that because the motion to vacate the plea was filed after the trial court vacated its first sentencing order, the trial court should have treated the motion as though it were a presentence motion.
This court has previously decided that a defendant is not deprived of due process where an offer of a plea bargain was conditioned on acceptance by co-defendants. State v. Cray (Dec. 18, 1986), Cuyahoga App. No. 51534, unreported. The appellant has no constitutional right to a plea bargain and the prosecutor has great latitude in such negotiations. Cray citing to Weatherford v. Bursey (1977), 429 U.S. 545
and North Carolina v. Alford (1970), 400 U.S. 25. As the Ninth Appellate District has held, package deal plea offers are not per se unconstitutional. State v. Franks (Oct. 7, 1998), Summit App. No. 18767, unreported. When defendants are advised by competent counsel and are protected by the appropriate procedural safeguards, they are presumptively capable of an intelligent and voluntary choice to plead guilty and forgo trial. Franks citing Bordenkircher v. Hayes (1978),434 U.S. 357. Although such package deals may present a greater risk of coercion, the voluntariness test adequately protects the defendant's due process rights. United States v. Wheat (C.A. 9, 1987), 813 F.2d 1399, affirmed on other grounds, 486 U.S. 153.
Turning to timing of the appellant's motion to vacate the plea, we begin with the language in Crim.R. 32.1 which provides:
 A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea.
The Supreme Court has held that a defendant does not have an absolute right to withdraw a guilty plea prior to sentencing. State v. Xie (1992), 62 Ohio St.3d 521, syllabus one. A trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea. Id. The general rule is that motions to withdraw guilty pleas before sentencing are to be freely allowed and treated with liberality. State v. Peterseim (1980), 68 Ohio App.2d 211. The decision to grant or deny a presentence motion to withdraw a guilty plea is within the sound discretion of the trial court. Xie, syllabus two. The Supreme Court has applied its holding in Xie to no contest pleas as well. State v. Spivey (1998), 81 Ohio St.3d 405 . On the other hand, a post-sentence motion to withdraw a guilty plea is evaluated by a manifest injustice standard. Crim.R. 32.1.
This court must note that in State ex rel. White v. Junkin (1997),80 Ohio St.3d 335, the Supreme Court found that a court speaks only through its journal and not by oral pronouncement or mere written minute or memorandum. In Junkin, the court considered a case where the trial court accepted a no-contest plea, imposed sentence, and then vacated the plea. The court had only written its order on the jacket of the file and the order had not been journalized. Thus, in the absence of evidence that an order has been journalized by the clerk of the trial court, there is no finality of a judgment. Id. The placement of the entry on a computerized docket is not tantamount to journalization of an order because it bears no time stamp or other indication that it was entered on the trial court's journal by the clerk. Junkin, supra. See, also, Kaine v. Marion Prison Warden (2000), 88 Ohio St.3d 454 where the Supreme Court reiterated that judgment in a criminal case is effective only when entered on the journal by the clerk.
In the case sub judice, the court's journal reflects that the plea was taken on August 16, 1999, but was not journalized until October 1, 1999. More importantly, while the appellant appeared before the court and the sentence was imposed on October 14, 1999, the sentencing order was not journalized until October 22, 1999. The appellant filed his motion to vacate his plea on October 20, 1999. Thus, pursuant to Junkin, supra, the appellant filed his motion to vacate the plea prior to the journalization of the sentencing order. The appellant correctly asserts that the trial court failed to hold the required hearing on his motion to vacate his plea which was filed prior to the entry of sentence.
The appellant's first assignment of error is denied in part and well taken in part. The appellant's third assignment of error is well taken. Remanded for hearing on the appellant's motion to vacate his guilty plea.
The appellant's second assignment of error:
 THE TRIAL COURT ERRED IN DENYING FULL ALLOCUTION TO APPELLANT. (T. 84, 89)
In this assignment of error, the appellant argues that the court erred in failing to permit counsel to speak fully on behalf of the appellant and that the court erred when it prohibited counsel from making a proffer into the record subsequent to the resentencing.
This court has held that Crim.R. 32(A) required the trial court to afford both the defendant and defense counsel the right to be heard prior to imposing sentence. "The purpose of allocution is to allow the defendant an additional opportunity to state any further information which the judge may take into consideration when determining the sentence to be imposed." See State v. Ginenez Sept. 16, 1999), Cuyahoga App. No. 75854, unreported, citing to Defiance v. Cannon (1990), 70 Ohio App.3d 821,828. See, also, State v. Waver (Aug. 19, 1999), Cuyahoga App. No. 73976, unreported, where the court reversed and remanded for failure to permit the right of allocution under Crim.R. 32(A). At least one court has held that denial of the right of allocution in a resentencing requires a remand for a third sentencing. State v. Haley (July 7, 1995), Greene App. Nos. 94-CA-89, 94-CA-108, 94-CA-109, unreported.
In this case, the court not only failed to provide either counsel or the appellant the right to speak at the court's sua sponte resentencing, the court also improperly denied counsel the right to proffer the error into the record.
The appellant's second assignment of error is well taken.
The fourth assignment of error:
 THE TRIAL COURT ERRED IN IMPOSING A SENTENCE OF POST-RELEASE CONTROL.
The appellant argues that the trial court erred in imposing a term of post-release control on the appellant when R.C. 2967.28 provides this power to the parole board. The appellant also contends that post-release control is unconstitutional.
The Ohio Supreme Court has determined that post-release control passes constitutional muster. Woods v. Telb (2000), 89 Ohio St.3d 504.
The Supreme Court also held that pursuant to R.C. 2967.28(B) and (C), a trial court must inform the defendant at sentencing or at the time of a plea hearing that post-release control is part of the defendant's sentence. Woods, at syllabus two. Post-release control is authorized for those imprisoned for [third] degree felonies at the discretion of the parole board. Woods, citing to R.C. 2967.28(C). The court also found that the parole board has significant discretion to impose conditions of release designed to protect the public and to promote the releasee's successful reintegration into the community. Ohio Adm. Code5120:1-1-17(A). Id.
Thus, it is clear from the very language of the statute and the holding in Woods, supra, that it is the parole board, not the trial judge, who has the authority to impose post-release control. The trial court exceeded its jurisdiction when it imposed three years of post-release control on the appellant.
The appellant's fourth assignment of error is well taken. Case remanded for resentencing.
The appellant's second assignment of error is moot pursuant to App.R. 12.
Judgment reversed and remanded for hearing on the motion to vacate the plea and for resentencing.
This cause is reversed and remanded.
It is, therefore, considered that said appellant(s) recover of said appellee(s) his costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
TIMOTHY E. McMONAGLE, P.J., and
MICHAEL J. CORRIGAN, J., CONCUR.
_________________________ JAMES D. SWEENEY, JUDGE
[1] The following is a summation, as best as can be determined, of the appellant's issues in the first assignment of error: 1) that appellant did not enter a knowing or voluntary plea because the plea was made under duress; 2) that the appellant and his co-defendants were improperly offered a package deal, either they could all enter guilty pleas or all proceed to trial; 3) that forcing him to base his decision to accept or reject a plea agreement and proceed to trial in conjunction with three other family members was unconstitutional; 4) that the plea was not knowing and voluntary because the trial court failed to properly explain the elements of the offenses; 5) the court failed to define the term in loco parentis; 6) that the trial court incorrectly stated that all no-contest pleas must be to the indictment; and, 7) the trial court erred in failing to hold a hearing on the motion to withdraw the plea.