[Cite as *State v. D.P.L.*, 2024-Ohio-3314.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                              :

      Plaintiff-Appellee,              :

                                   No. 23AP-649
v.                                         :          (C.P.C. No. 13CR-3774)

[D.P.L.],                                  :          (REGULAR CALENDAR)

      Defendant-Appellant.             :

---

D E C I S I O N

Rendered on August 29, 2024

---

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Kimberly M. Bond*, for appellee. **Argued:** *Kimberly M. Bond*.

**On brief:** *Hoague Law Office*, and *Michael Christopher Hoague*, for appellant. **Argued:** *Michael Christopher Hoague*.

---

APPEAL from the Franklin County Court of Common Pleas

EDELSTEIN, J.

{¶ 1} Defendant-appellant, D.P.L., appeals from the September 26, 2023 judgment of the Franklin County Court of Common Pleas denying motions filed in connection with his attempt to obtain a refund of restitution he paid but has not yet been distributed to the victims of his financial crimes—and may never be. This is because many of the victims eligible to receive restitution have not been located by plaintiff-appellee, the State of Ohio, to date. As a result, some of the unclaimed restitution funds D.P.L. voluntarily paid into the clerk's restitution escrow account, pursuant to plea agreement, may ultimately be treated as forfeited and/or abandoned and may be disposed of at the discretion of the state, as provided by the terms of the plea agreement executed in the case below. Notwithstanding the agreement and the fact that the case below was sealed in 2021 on D.P.L.'s application, D.P.L. filed various motions in the trial court in 2023 seeking to

recover the $346,385.32 currently held in the clerk's escrow account as unclaimed restitution owed to victims in this case.

{¶ 2} Because we find the trial court correctly determined it lacked jurisdiction to consider D.P.L.'s motions, we affirm the judgment below.

## I. FACTS AND PROCEDURAL OVERVIEW

{¶ 3} In 2013, the state charged D.P.L. with 24 counts of various financial crimes in connection with a complex mortgage fraud scheme spanning over a 12-month period and resulting in the issuance of fraudulent loans exceeding $1.2 million. We need not belabor the nature of these offenses, as it is not relevant to the issue before us in this case.

{¶ 4} In April 2014, D.P.L. entered a counseled guilty plea to one count of second-degree felony theft and three counts of money laundering, all felonies of the third degree. As part of that plea agreement, the parties jointly recommended that D.P.L. serve a four-year prison term, with eligibility for judicial release after two years. And, most notably, the state agreed it would not seek restitution. However, D.P.L. failed to appear for sentencing in July 2014 and a capias was issued for his arrest.

{¶ 5} On February 23, 2016, D.P.L. moved to withdraw his guilty plea and requested the trial court set aside the capias. In that motion, D.P.L. stated that, if the capias was set aside, he would "prepay an agreed amount of restitution" into the clerk's restitution escrow account in "an amount sufficient to cover all agreed restitution to the satisfaction of the state" even before the specific terms of a new plea agreement were negotiated. (Mot. to Withdraw at 1-2.) On February 29, 2016, the trial court recalled the capias and scheduled the matter for a hearing on April 5, 2016.

{¶ 6} D.P.L. deposited $620,000 into the clerk's restitution escrow account on March 1, 2016. In anticipation of the scheduled hearing, counsel met and came to an agreement on acceptable terms for a renegotiated plea. (*See* July 26, 2023 Memo Contra at Ex. B.) As part of that renegotiated agreement, D.P.L. agreed to plead guilty to theft, a third-degree felony, and pay $577,549.48 in restitution. (*See* July 26, 2023 Memo Contra at Ex. A.) The parties further agreed that, of the $620,000 D.P.L. paid into the clerk's restitution escrow account, "the difference of $42,450.52, less any costs or fines, fees or expenses ordered by the court, shall be refunded to [D.P.L.]," with the remaining balance being distributed to the appropriate entities, as determined by the prosecutor's office.

(July 26, 2023 Memo Contra at Ex. A, ¶ 2.)  And, most significantly, the plea agreement signed by both parties stated as follows:

> [D.P.L.] understands and agrees that the State is still in the process of determining eligible recipients for the restitution and will continue to do so after the plea.  [D.P.L.] agrees that the Franklin County Prosecutor's Office will be the sole entity responsible for the determination of restitution recipients and the manner of distribution of the restitution funds **and [D.P.L.] relinquishes all right, title and interest in and to the funds**. * * * In the event that the State is unable to locate one of more recipients of the restitution funds after a diligent search, **[D.P.L.] agrees that the remaining funds shall be treated as forfeited and/or abandoned and shall be disposed of at the state's discretion accordingly**.

(Emphasis added.)  (July 26, 2023 Memo Contra at Ex. A, ¶ 2.)

{¶ 7}    On April 5, 2016, the parties appeared before the trial court for a hearing on D.P.L.'s motion to withdraw his 2014 plea and to proceed on the renegotiated plea agreement and sentencing.  After the trial court permitted D.P.L. to withdraw his previously entered plea of guilty, counsel presented the terms of the parties' renegotiated plea agreement.  In relevant part, the trial prosecutor conveyed the parties' understanding that, "[a]s part of this plea agreement and as part of the State[] * * * not [] object[ing] to [D.P.L.'s] withdrawal of the previous plea, the State has requested that [D.P.L.] relinquish all rights or control over those funds" he voluntarily paid into the clerk's restitution escrow account, less the agreed-upon $42,450.52. (Apr. 5, 2016 Tr. at 3-5. *See* July 26, 2023 Memo Contra at Ex. A, ¶ 2.)  D.P.L. agreed with the trial prosecutor's oral recitation of the plea agreement terms and the authenticity and accuracy of the written plea agreement executed by the parties.  (*See* Tr. at 5-12.)   More precisely, D.P.L. affirmed that, by entering into renegotiated plea agreement on April 5, 2016, he was relinquishing all rights and control over the $577,549.48 in restitution funds he voluntarily paid into the clerk's restitution escrow account.  (*See* Tr. at 3-8.)

{¶ 8}    After accepting D.P.L.'s guilty plea, the trial court proceeded to sentencing. During allocution, D.P.L.'s counsel emphasized that "full and complete" restitution had been made in arguing for a sentence of community control.  (*See* Tr. at 14-15.)  In imposing sentence, the trial court noted D.P.L.'s lack of any prior criminal history and pronounced

that "**[g]iven your restitution**, I will grant you community control on this matter." (Emphasis added.) (Tr. at 16-17.) As such, D.P.L. was placed on community control for a period of two years. On April 19, 2016, the trial court entered its final judgment memorializing D.P.L.'s conviction and sentence.

{¶ 9} D.P.L. was successfully terminated and released from community control in April 2017. Over three years later, D.P.L. timely applied for sealing of the record of the case below. Notwithstanding the state's objection to that motion, the trial court entered a judgment on March 25, 2021 granting D.P.L.'s application and ordering all official records pertaining to his conviction in the case below sealed.

{¶ 10} This appeal concerns the trial court's September 26, 2023 denial of D.P.L.'s July 2023 motions concerning the $346,385.32 currently held in the clerk's restitution escrow account. This is the amount that remains at this time based on the state's identification, location, and compensation of the victims of D.P.L.'s mortgage fraud scheme, to date, from the $577,549.48 restitution payment D.P.L. voluntarily agreed to pay and was formally imposed by the trial court as part of his sentence.

{¶ 11} In his July 2023 motions, D.P.L. requested an order from the trial court directing the clerk to release the undispersed funds remaining in its escrow account to D.P.L. or, in the alternative, to issue a nunc pro tunc order modifying the restitution amount imposed in the original April 19, 2016 sentencing entry. D.P.L. requested an oral hearing on his motions and moved to strike the state's July 26, 2023 memorandum contra (with attached exhibits) opposing D.P.L.'s request that the undispersed restitution funds held in the clerk's escrow account be released to him.

{¶ 12} On September 26, 2023, the trial court entered a judgment denying D.P.L.'s motion without a hearing for lack of subject-matter jurisdiction. The trial court also cited to the relevant language in the plea agreement D.P.L. signed on April 5, 2016 explicitly relinquishing " 'all right, title and interest in and to the funds' " and agreeing that all " 'remaining funds shall be treated as forfeited and/or abandoned and shall be disposed of at the state's discretion accordingly.' " (Sept. 26, 2023 Decision and Entry at 3, quoting July 26, 2023 Memo Contra at Ex. A, ¶ 2.) The trial court further concluded that because restitution in the amount of $577,549.48 was clearly imposed at the April 2016 sentencing hearing and memorialized in its corresponding judgment entry, a nunc pro tunc order—

whose function is to correct *clerical* mistakes in judgments, not substantive ones—could not be used to make the substantive modification D.P.L. requested to the restitution amount.

{¶ 13} D.P.L. now appeals from that decision and asserts the following six assignments of error for our review:

> [I.] THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND AN ABUSE OF DISCRETION BY DENYING WITHOUT A HEARING [D.P.L.'S] MOTION SEEKING EQUITABLE RECOUPMENT OF THE EXCESS FUNDS REMAINING ON DEPOSIT IN ESCROW DUE TO [D.P.L.'S] SUBSTANTIAL MISTAKEN OVERPAYMENT OF RESTITUTION.
>
> [II.] THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND AN ABUSE OF DISCRETION BY DENYING [D.P.L.'S] MOTION PURSUANT TO CRIM.R.[]36 FOR A NUNC PRO TUNC ENTRY TO CORRECT THE ERROR IN THE RESTITUTION ORDER TO REFLECT THE ACTUAL NUMERICAL AMOUNT OF RESTITUTION.
>
> [III.] THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND AN ABUSE OF DISCRETION BY FAILING TO STRIKE AND OR GIVING ITS IMPRIMATUR TO DOCUMENTS AND EXHIBITS FILED BY [THE STATE] THAT WERE COMPLETELY DEHORS THE SEALED RECORD OF THE CASE, NOT PROPERLY AUTHENTICATED AND SPECIFICALLY OBJECTED TO AND REPUDIATED BY [D.P.L.].
>
> [IV.] THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND AN ABUSE OF DISCRETION BY DENYING [D.P.L.'S] MOTION TO RECOVER EXCESS RESTITUTION FUNDS ON DEPOSIT IN ESCROW AND INSTEAD GIVING ITS IMPRIMATUR TO THE STATE OF OHIO TO CONFISCATE THOSE FUNDS WITHOUT JUST COMPENSATION TO [D.P.L.] THEREBY VIOLATING [D.P.L.'S] RIGHTS UNDER THE TAKINS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND OHIO CONSTITUTION ARTICLE I, SECTION 19.
>
> [V.] THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND AN ABUSE OF DISCRETION BY DENYING [D.P.L.'S] MOTION TO RECOVER EXCESS RESTITUTION FUNDS ON DEPOSIT IN ESCROW AND INSTEAD GIVING ITS

IMPRIMATUR TO THE STATE OF OHIO TO CONFISCATE THOSE FUNDS THEREBY VIOLATING THE EXCESSIVE FINES CLAUSE AND OR THE PROHIBITION AGAINST CRUEL AND UNUSUAL PUNISHMENT OF THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND OHIO CONSTITUTION, ARTICLE I, SECTION 9.

[VI.] TO THE EXTENT THAT THE TRIAL COURT WAS DIVESTED OF JURISDICTION UPON ITS SEALING OF THE RECORDS OF THE CASE PURSUANT TO FORMER REVISED CODE SECTIONS 2953.32[,] ET. SEQ., THE COURT LACKED JURISDICTION RENDERING ITS "DECISION AND ENTRY" VOID.

## II. ANALYSIS

### A. Controlling Legal Standards

{¶ 14} Subject-matter jurisdiction refers to a court's power to entertain and adjudicate a particular class of cases on the merits.[1] *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, ¶ 19, citing *Morrison v. Steiner*, 32 Ohio St.2d 86, 87 (1972). Because a court is powerless to hear a case without subject-matter jurisdiction, " '[a] court's subject-matter jurisdiction is determined without regard to the rights of the individual parties involved in a particular case.' " *Corder v. Ohio Edison Co.*, 162 Ohio St.3d 639, 2020-Ohio-5220, ¶ 14, quoting *Kuchta* at ¶ 19. "Instead, 'the focus is on whether the forum itself is competent to hear the controversy.' " *Id.* at ¶ 14, quoting *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, ¶ 23, citing 18A Wright, Miller & Cooper, *Federal Practice and Procedure*, Section 4428, at 6 (3d Ed.2017) ("Jurisdictional analysis should be confined to the rules that actually allocate judicial authority among different courts.").

{¶ 15} Common pleas courts "have such original jurisdiction over all justiciable matters * * * as may be provided by law." Ohio Constitution, Article IV, Section 4(B). Thus, when a common pleas court patently and unambiguously lacks jurisdiction to hear a case, " 'it is almost always because a statute explicitly removed that jurisdiction.' " *Schlegel v.*

---

[1] In comparison, "[a] court's jurisdiction over a particular case refers to the court's authority to proceed or rule on a case that is within the court's subject-matter jurisdiction." *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, ¶ 19, citing *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, ¶ 12. Unlike subject-matter jurisdiction, jurisdiction over a particular case involves consideration of the rights of the parties. *Id.* at ¶ 19. "Personal jurisdiction" refers to a court's power to render a valid judgment against a particular individual. *See, e.g.*, *State v. Henderson*, 161 Ohio St.3d 285, 2020-Ohio-4784, ¶ 36.

*Sweeney*, 171 Ohio St.3d 1, 2022-Ohio-3841, ¶ 14, quoting *Ohio High School Athletic Assn. v. Ruehlman*, 157 Ohio St.3d 296, 2019-Ohio-2845, ¶ 9.

{¶ 16} "Where a court lacks subject-matter jurisdiction, it must announce its lack of jurisdiction and dismiss the matter; any other proclamation by a court lacking subject-matter jurisdiction is void." *Hulbert v. Buehrer*, 10th Dist. No. 16AP-474, 2017-Ohio-844, ¶ 12, citing *Pratts* at ¶ 11, quoting *State ex rel. Jones v. Suster*, 84 Ohio St.3d 70, 75 (1998), citing *Scudere v. France*, 10th Dist. No. 09AP-422, 2009-Ohio-6989, ¶ 6. For this reason, D.P.L.'s sixth assignment of error—arguing that if the trial court lacked jurisdiction to consider the July 2023 motions, then September 26, 2023 judgment entry is void ab initio—is without merit.

{¶ 17} An appellate court reviews the issue of subject-matter jurisdiction de novo. *Hulbert* at ¶ 12, quoting *Klosterman v. Turnkey-Ohio, L.L.C.*, 182 Ohio App.3d 515, 2009-Ohio-2508, ¶ 19 (10th Dist.). *See also Pointer v. Smith*, 10th Dist. No. 20AP-555, 2021-Ohio-2247, ¶ 8, citing *Pankey v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 13AP-701, 2014-Ohio-2907, ¶ 7.

## B. Analysis

{¶ 18} Regarding criminal matters, a court of common pleas "has original jurisdiction of all crimes and offenses, except in cases of minor offenses the exclusive jurisdiction of which is vested in courts inferior to the court of common pleas." R.C. 2931.03; *see State ex rel. Mason v. Griffin*, 104 Ohio St.3d 279, 2004-Ohio-6384, ¶ 15-16; Ohio Constitution, Article IV, Section 4(B) (conferring "original jurisdiction over all justiciable matters * * * as may be provided by law" upon the courts of common pleas). The jurisdiction of a court of common pleas is invoked by the return of an indictment. *Click v. Eckle*, 174 Ohio St. 88, 89 (1962). *See* R.C. 2901.11. Once the criminal proceedings are complete, a trial court's jurisdiction over a criminal matter is limited. *See State ex rel. Davis v. Janas*, 160 Ohio St.3d 187, 2020-Ohio-1462, ¶ 11.

{¶ 19} Generally, a trial court's jurisdiction over a criminal matter ends once a valid final judgment has been issued pursuant to Crim.R. 32. *See, e.g.*, *State v. Gilbert*, 143 Ohio St.3d 150, 2014-Ohio-4562, ¶ 8-9; *State v. Carlisle*, 131 Ohio St.3d 127, 2011-Ohio-6553, ¶ 11 (a judgment of conviction is final when it meets each of the requirements of Crim.R.

32(C)). *See also Janas* at ¶ 11 (observing that "a trial court loses jurisdiction to modify its judgment once that judgment has been affirmed on appeal").

**{¶ 20}** Accordingly, "[r]elief from final judgments in criminal cases is confined to the procedures authorized by statute or rule." *Janas* at ¶ 11, citing *State v. Davis*, 131 Ohio St.3d 1, 2011-Ohio-5028, ¶ 37. *See also State v. Enyart,* 10th Dist. No. 22AP-645, 2023-Ohio-3373, ¶ 26; *Carlisle* at ¶ 1 ("Absent statutory authority, a trial court is generally not empowered to modify a criminal sentence by reconsidering its own final judgment."). Indeed, because the law desires finality of judgments, trial courts cannot reconsider their own valid final judgments in criminal cases. *See, e.g., State ex rel. White v. Junkin*, 80 Ohio St.3d 335, 338 (1997), citing *State ex rel. Hansen v. Reed*, 63 Ohio St.3d 597 (1992); *State v. Fedor*, 10th Dist. No. 22AP-386, 2023-Ohio-1455, ¶ 9-11.

**{¶ 21}** These limitations on a trial court's post-judgment authority over criminal matters are consistent with the Supreme Court of Ohio's repeated affirmation of its commitment to the principle that finality of judgments creates "certainty in the law and public confidence in the system's ability to resolve disputes." (Internal quotation marks omitted.) *Gilbert* at ¶ 8, quoting *Miller v. Nelson-Miller*, 132 Ohio St.3d 381, 2012-Ohio-2845, ¶ 18, quoting *Strack v. Pelton*, 70 Ohio St.3d 172, 175 (1994), quoting *Knapp v. Knapp*, 24 Ohio St.3d 141, 144-45 (1986). "The purpose of a court is to resolve controversies, not to prolong them. When issues are constantly relitigated, there is no resolution and hence no finality." *State v. Steffen*, 70 Ohio St.3d 399, 409-10 (1994).

**{¶ 22}** In this case, D.P.L. did not appeal from the April 5, 2016 judgment of conviction imposing sentence and has never claimed that judgment entry was not valid or final under Crim.R. 32(C). Nor does he seek to withdraw his April 2016 guilty plea pursuant to Crim.R. 32.1. Instead, his July 2023 motions asked the trial court to reconsider and modify its valid final judgment issued on April 19, 2016 regarding the amount of restitution ordered as part of his sentence. At issue, then, is whether D.P.L. sought substantive review of the imposed restitution amount (which the trial court is without jurisdiction to do) or if the modification he requests pertains to a clerical error in the final judgment (which can be corrected post-judgment through a nunc pro tunc entry). For the reasons that follow, we find the former.

**{¶ 23}** Although trial courts generally lack authority to reconsider their own valid final judgments in criminal cases, they retain continuing jurisdiction under Crim.R. 36 to correct clerical errors in judgments by issuance of a nunc pro tunc order reflecting what the court ***actually decided***. *See, e.g., State ex rel. Womack v. Marsh*, 128 Ohio St.3d 303, 2011-Ohio-229, ¶ 13, citing *State ex rel. Cruzado v. Zaleski*, 111 Ohio St.3d 353, 2006-Ohio-5795, ¶ 18-19, and Crim.R. 36 ("Clerical mistakes in judgments, orders, or other parts of the record, and errors in the record arising from oversight or omission, may be corrected by the court at any time.").

**{¶ 24}** On review of the record and briefing in this matter, it is clear D.P.L. does not claim the April 19, 2016 judgment entry failed to accurately state the restitution amount imposed by the trial court at his April 5, 2016 sentencing. Indeed, his fourth and fifth assignments of error both present substantive constitutional challenges—unlawful taking and cruel and unusual punishment, respectively—to the propriety of the amount of restitution imposed when he was sentenced in 2016 and form the legal basis for his modification request. Yet, he cites to no legal authority supporting his position that a valid final judgment can be modified at any point after it is entered when a constitutional challenge to the restitution amount is presented. And, we are not aware of any such procedure.

**{¶ 25}** To the contrary, the Supreme Court has held that "the determination of restitution entails a substantive legal decision or judgment and is not merely a mechanical part of a judgment." *State v. Miller*, 127 Ohio St.3d 407, 2010-Ohio-5705, ¶ 16. Just as a nunc pro tunc order cannot cure the failure of a judge to impose restitution in the first instance at sentencing, it likewise cannot be used to modify the amount of restitution imposed in a valid final judgment, barring any clerical error that is apparent on the record. *See, e.g., State v. L.K.*, 10th Dist. No. 23AP-49, 2024-Ohio-1890, ¶ 20-22; *State v. Brewer*, 8th Dist. No. 94144, 2010-Ohio-5242, ¶ 15. This is because " ' "[t]he function of a nunc pro tunc entry is to have the record reflect what the court actually decided and not what the court might have decided or should have decided." ' " *L.K.* at ¶ 20, quoting *Watkins v. Allstate Vehicle & Property Ins. Co.*, 6th Dist. No. L-19-1235, 2020-Ohio-3397, ¶ 49, quoting *Pollock v. Hall*, 6th Dist. No. L-16-1096, 2017-Ohio-1218, ¶ 8, citing *State ex rel. Fogle v. Steiner*, 74 Ohio St.3d 158, 164 (Dec. 6, 1995). Because we find D.P.L.'s July 2023

motions in the trial court sought a substantive reconsideration and modification of the restitution amount imposed at sentencing, D.P.L.'s second assignment of error attributing error to the trial court's denial of his motion for a nunc pro tunc order is without merit.

{¶ 26} Applying the principles above, we also conclude the trial court lacked subject-matter jurisdiction to substantively reconsider and modify a valid final judgment after it was entered in 2016, D.P.L.'s community control was successfully terminated in 2017, and his record of conviction was sealed in 2021. As such, the trial court did not err in denying D.P.L.'s July 2023 motions for lack of subject-matter jurisdiction without a hearing. We reach this determination without consideration of the supporting exhibits attached to the state's July 26, 2023 memorandum contra with which D.P.L. takes issue in his third assignment of error—namely, the written and signed plea agreement offered as Exhibit A. This is because the absence of any statute or rule conferring jurisdiction upon the trial court to reconsider its valid final judgment and to modify the restitution amount imposed as part of a criminal sentence is fatal to all arguments D.P.L. presents on appeal. It follows, contrary to D.P.L.'s contention otherwise in his first assignment of error, the trial court was under no obligation to hold a hearing. *See Morrison*, 32 Ohio St.2d at 87 ("Subject-matter jurisdiction of a court connotes the power to ***hear*** and decide a case upon its merits."). (Emphasis added.)

{¶ 27} In any event, D.P.L.'s contention that the trial court still had jurisdiction in 2023 to modify the April 19, 2016 judgment is belied by the trial court's subsequent actions in the case favorable to D.P.L. Specifically, the trial court successfully terminated D.P.L. from community control in April 2017 and granted his application for sealing his record of conviction in March 2021. D.P.L. does not contend either was in error. Notably, R.C. 2953.32 provides that a person convicted of a felony offense is eligible to apply for sealing of conviction three years after the defendant's "final discharge." Although the state opposed his application for sealing on the merits, the fact of D.P.L.'s "final discharge" was not in dispute. "Final discharge" is achieved after a defendant has served all criminal portions of the punishment imposed by the court, including any period of prison or jail, any period of post-release control or community control, and the payment of restitution and any fine imposed. *See, e.g., State v. Hoover*, 10th Dist. No. 12AP-818, 2013-Ohio-3337, ¶ 7; *State v. Aguirre*, 144 Ohio St.3d 179, 2014-Ohio-4603, ¶ 12-19. Since D.P.L. has achieved final

discharge from the case below—as evidenced by the fact of the sealing of the record for that case—the trial court was without jurisdiction to address his July 2023 motions.

{¶ 28}  Having found the trial court did not err in entering a judgment announcing its lack of subject-matter jurisdiction, we overrule all six of D.P.L.'s assignments of error.

## III. CONCLUSION

{¶ 29}  Having overruled D.P.L.'s six assignments of error, we affirm the September 26, 2023 judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN and LELAND, JJ., concur.

_____