JOURNAL ENTRY AND OPINION
{¶ 1} Defendants-appellants, Consolidated Rail Corporation and American Financial Group, Inc. (hereafter "ConRail"), appeal from the trial court's order granting the motion of plaintiffs-appellees, Richard Shesler and Donald Speidel, Jr., for enforcement of judgment. For the reasons that follow, we reverse.
 {¶ 2} Shesler and Speidel, career railroad workers, brought this action under the Federal Employers' Liability Act,45 U.S.C. § 51 et seq., for injuries sustained to their respiratory systems as a result of working with and around asbestos-containing products and materials while employed by appellants.
 {¶ 3} Trial commenced in December 2001. On December 19, 2001, the jury returned a verdict in favor of Shesler and Speidel in the amount of $128,500 each. On December 21, 2001, the trial judge entered a signed judgment entry for each plaintiff in the amount of $128,500 plus costs on the court's Complex Litigation Automatic Docket. This docket, also known as CLAD, is an electronic docket. Pursuant to an order issued January 7, 1999 by Judge Harry A. Hanna, "all filings in all asbestos cases shall be made on the CLAD system."
 {¶ 4} After the trial court's entry of judgment, ConRail filed four post-trial motions — motion for remittitur, motion for judgment notwithstanding the verdict, motion for setoff and motion for a new trial — which the trial court denied. This court subsequently affirmed the trial court's judgment. Shesler v.Consolidated Rail Corp., 151 Ohio App.3d 462, 2003-Ohio-320.
 {¶ 5} Shesler and Speidel then filed a motion for enforcement of judgment, seeking payment of the judgments and 10% per annum post-judgment interest. They calculated the interest from December 21, 2001, the date on which the trial court entered the judgments in their favor on CLAD. ConRail opposed the motion with respect to the post judgment interest and argued that the interest should be calculated from March 11, 2002, the date on which the judgments were journalized by the court clerk.
 {¶ 6} After a hearing, the trial court granted Shesler and Speidel's motion. This appeal followed.[1]
 {¶ 7} In its first assignment of error, ConRail contends that the trial court erred in ruling that post-judgment interest began accruing on December 21, 2001, rather than March 11, 2002.
 {¶ 8} R.C. 1343.03(B) provides that "interest on a judgment * * * for the payment of money rendered in a civil action based on tortious conduct * * * shall be computed from the date the judgment * * * is rendered to the date on which the money is paid."
 {¶ 9} It is well settled that a judgment is "rendered," and post-judgment interest begins to accrue, on the date judgment is entered by the court, not on the date the jury returns its verdict. See, e.g., Viock v. Stoew-Woodward Co. (1989),59 Ohio App.3d 3, 6 ("interest begins on the date of the trial court's journal entry"); Enghauser Mfg. Co., Inc. v. Eriksson Eng. Ltd.
(1984), 21 Ohio App.3d 121, 123 ("interest accrues from the date judgment is entered by the court"); Coulter v. GeneralFireproofing Co. (1941), 67 Ohio App. 71, 75 (jury verdict becomes a judgment, rendering money due and payable, only when the verdict is "transmuted by the entry of judgment upon the journal of the court"); Hardesty v. P.J. Bordner Co., Inc.
(Dec. 29, 1994), Stark App. Nos. 1994CA00135 1994CA00137.
 {¶ 10} The obvious question in this matter, therefore, is whether the trial court's December 21, 2001 entry upon the CLAD system was sufficient to enter judgment in Shesler and Speidel's favor and begin the accrual of post-judgment interest. We think not.
 {¶ 11} Civ.R. 58(A), regarding "entry of judgment," provides that "* * * upon a general verdict of a jury, * * * the court shall promptly cause the judgment to be prepared and, the court having signed it, the clerk shall thereupon enter it upon the journal." The rule provides further that "a judgment is effective only when entered by the clerk upon the journal."
 {¶ 12} Accordingly, Civ.R. 58(A) requires two separate and independent acts with respect to an "entry of judgment:" first, the judge must prepare, sign and transmit the judgment entry to the clerk for journalization; and, second, the clerk must enter the judgment upon the journal.
 {¶ 13} Here, as evidenced by the judge's statements at the hearing regarding Shesler and Speidel's motion to enforce judgment, the trial judge clearly intended that his December 21, 2001 entry of judgment on CLAD was in lieu of any entry of judgment by the clerk upon the journal. The judge stated:
 {¶ 14} "Under the system that we have been functioning, the CLAD, Complex Litigation Automatic Docket, for the last few years, has the overriding principle that filing paper with the clerk is no longer necessary or advisable. We have substituted the computer for the desk of the clerk's office. So all pleadings other than the original complaint have been filed with CLAD since its implementation.
 {¶ 15} "On December 21st, 2001, after the verdict was entered in these two cases, I entered judgment on behalf of each plaintiff in the CLAD system. The Court of Appeals has also from the inception of our utilization of this system insisted that upon appeal all orders of the court that are germane to the appeal must be reduced to writing and signed by the judge who presided over the matter. That is why on March 11th, after the defendant had filed its Notice of Appeal, the journal entry reflecting the judgment on behalf of each plaintiff was reduced to writing, signed by the court, and entered in the Court of Appeals. It was certainly the intent of the court to enter judgment on December 21st, 2001, consistent with the CLAD system."
 {¶ 16} Despite the court's intention, however, in light of the requirements of Civ.R. 58(A), it is apparent that "entry of judgment" did not occur until March 11, 2002, when the judgments were finally entered by the clerk upon the journal. The January 7, 1999 trial court order directing that all filings in asbestos cases be made on the CLAD system does not change this result. The January 7, 1999 order pertains only to "filings" in asbestos cases; it does not change the separate and independent requirement of Civ.R. 58(A) that, to be effective, judgments must be entered by the clerk upon the journal.
 {¶ 17} Moreover, the CLAD system pertains to the court's electronic asbestos docket. The Ohio Supreme Court has stated, however, that "dockets and journals are distinct records kept by clerks. * * * A docket is not the same as a journal." State exrel. White v. Junkin (1997), 80 Ohio St.3d 335, 337. The clerk of the court of common pleas is directed to maintain separate
books, consisting of the appearance docket, the trial docket, a journal and the execution docket. R.C. 2303.12; see, also, Loc.R. 5 of the Cuyahoga County Court of Common Pleas.
 {¶ 18} The difference between a docket and a journal was explained in White v. Junkin, supra, in which the defendant was charged with domestic violence. The charge was amended to disorderly conduct and, after a hearing, the trial judge accepted the defendant's no contest plea and found him guilty. The judge sentenced the defendant to ten days in jail, suspended the sentence, and fined him $100 plus court costs. The judge recorded his oral decision on the case file jacket and initialed his decision. An official in the clerk's office entered the case file notations in the computerized docket system and the defendant paid his fine and court costs. The next day, however, the trial judge issued a journal entry vacating his decision, setting trial on the original domestic violence charge and ordering that the fine and costs be refunded to the defendant. The defendant then filed a complaint for a writ of prohibition to prevent the judge from vacating his disorderly conduct conviction and sentence and proceeding on the original charge.
 {¶ 19} The Ohio Supreme Court reversed the judgment of the court of appeals issuing the writ. Noting the distinction between dockets and journals, the Supreme Court stated, "the clerk's placement of information from the September 30, 1996 decision on the computerized docket was not tantamount to journalization of the decision." Id. "Thus," the court continued, "the undisputed evidence establishes that the September 30, 1996 file entry was never journalized by the clerk. Since the decision was never journalized, appellants did not patently and unambiguously lack jurisdiction to vacate that decision and proceed on the original charge of domestic violence." Id. at 338.
 {¶ 20} Similarly, the trial judge's entry of judgment in favor of Shesler and Speidel on the automated litigation docket for asbestos cases was not equivalent to journalization of the decision as required by Civ.R. 58(A). The Ohio Supreme Court has repeatedly made clear that a "court speaks through its journal and a judgment is not rendered until it is reduced to a journal entry." In re Petition for Inquiry Into Certain Practices
(1948), 150 Ohio St. 393, 398. See, also, In re Adoption ofGibson (1986), 23 Ohio St.3d 170, 173 ("A court of record speaks only through its journal and not by oral pronouncement or mere written minute or memorandum.") Here, judgment was rendered on March 11, 2002, when the clerk journalized the judgment entries in favor of Shesler and Speidel on the court's journal. Accordingly, the trial court erred in determining that post-judgment interest began accruing on December 21, 2001, rather than on March 11, 2002.
 {¶ 21} Appellants' first assignment of error is sustained. Because appellants have already unconditionally tendered $148,144.66 in each case, including post-judgment interest from March 11, 2002 to September 20, 2003, no further payment of post-judgment interest is necessary.
 {¶ 22} Our resolution of appellants' first assignment of error renders their second assignment of error moot and, therefore, we need not consider it. See App.R. 12(A)(1)(c).
Judgment reversed.
This cause is remanded for further proceedings consistent with the opinion herein.
It is, therefore, ordered that appellants recover from appellees costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Karpinski, P.J., and Rocco, J., concur.
[1] Based on a period of March 11, 2002 to September 20, 2003, ConRail calculated that each plaintiff was entitled to post-judgment interest in the amount of $19,644.66, for a total payment of $148,144.66 each. ConRail tendered payment, but now disputes the payment of an additional $3,679.30 in post-judgment interest to each plaintiff for the period December 21, 2001 to March 11, 2002.