[Cite as *Garvey v. Vermilion*, 2012-Ohio-1258.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| JILL E. GARVEY | | C.A. No. 10CA009873 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| CITY OF VERMILION | | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | | CASE No. 08CV158734 |

DECISION AND JOURNAL ENTRY

Dated: March 26, 2012

---

MOORE, Judge.

**{¶1}** Appellant, the City of Vermilion, appeals from the judgment of the Lorain County Court of Common Pleas. This Court affirms in part, reverses in part, and remands the matter for further proceedings.

I.

**{¶2}** On February 19, 2005, Appellee Jill Garvey and her husband, Rick, stopped at a bar in Vermilion, Ohio. While there, Garvey consumed four to six beers. At approximately 10:45 in the evening, the Garveys left the bar and proceeded to a Speedway gas station, where they picked up Jeff Holbrook and Jamie Laciniak. Officer Larry Miller saw Rick operating a vehicle and knew that Rick's driver's license was suspended. Officer Miller initiated a traffic stop. Rick admitted that his license was suspended and told Officer Miller that Jill owned the vehicle. Garvey was asked if she knew that Rick was driving under suspension, to which she

replied, "Yes, I do now." Officer Miller smelled alcohol on Rick's breath and asked him to step out of the vehicle.

{¶3}  Officer Miller then instructed Garvey to step out of her vehicle. The officer informed her that she was being cited for wrongful entrustment. Officer Howell, who arrived after the initial stop, assisted with the citation for wrongful entrustment. Garvey assented to being placed in Officer Howell's cruiser. Officer Howell informed her that her vehicle would be towed, and she became "agitated" and "defiant." She was repeatedly asked to sign the citation so she could be released, but she refused to do so.

{¶4}  As a result of her refusal to sign the ticket and her apparent intoxication, Garvey was advised that she was being placed under arrest. The officers requested that she exit the cruiser so that she could be handcuffed. She refused to voluntarily exit the vehicle. Officer Richard Grassnig attempted to remove her from the vehicle. She was taken to the ground, landing on her chest and face, and placed in handcuffs. As a result, Garvey sustained an orbital blowout fracture, a fracture of the maxillary sinus, permanent hypoesthesia of her lower left eyelid and bruising to her arm and neck.

{¶5}  As a result of the incident, on February 17, 2006, Garvey filed a complaint against the City of Vermilion, Officer Grassnig and Officer Howell (collectively "the Appellants"). The matter was voluntarily dismissed pursuant to Civ.R. 41(A) on October 1, 2007 and refiled on September 25, 2008. In the complaint, Garvey alleged that the Appellants violated her Fourth and Fourteenth Amendment rights to be free from excessive force and unlawful seizure. She also asserted claims of assault, battery, gross neglect, negligent hiring, negligent retention, and infliction of emotional distress.

{¶6} On May 3, 2010, the Appellants filed their respective motions for summary judgment. On June 21, 2010, Garvey filed her brief in opposition to the motions for summary judgment. The Appellants filed replies on August 2, 2010. The trial court denied the motions for summary judgment on August 2, 2010.

{¶7} The Appellants timely filed a notice of appeal. They raise five assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED IN DETERMINING THAT [] OFFICERS CRAIG HOWELL AND RICHARD GRASSNIG WERE NOT ENTITLED QUALIFIED IMMUNITY ON [] GARVEY'S CLAIMS FOR ALLEGED VIOLATION OF HER FO[U]RTH AND FOURTEENTH AMENDMENT RIGHTS.

{¶8} In their first assignment of error, Officers Howell and Grassnig contend that the trial court erred in determining that they were not entitled to qualified immunity on Garvey's claims for violations of her Fourth and Fourteenth Amendment rights. We do not agree.

{¶9} "As a general rule, the denial of a motion for summary judgment is not a final, appealable order." (Emphasis omitted.) *Budich v. Reece*, 9th Dist. No. 24108, 2008-Ohio-3630, ¶ 7. R.C. 2744.02(C), however, provides that "[a]n order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order." *Accord Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, ¶ 27. At this juncture, our appellate jurisdiction extends only to questions of immunity under R.C. 2744.02(C). *See Devaux v. Albrecht Trucking Co., Inc.*, 9th Dist. No. 09CA0069-M, 2010-Ohio-1249, ¶ 7.

{¶10} This Court reviews a trial court's ruling on a summary judgment motion de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). We apply the same standard as the

trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983).

{¶11} Pursuant to Civ.R. 56(C), summary judgment is proper if: "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶12} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-93 (1996). Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). *Id.* Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. *Id.* at 293. The non-moving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. *Henkle v. Henkle*, 75 Ohio App.3d 732, 735 (12th Dist.1991).

{¶13} "When determining if qualified immunity shields an officer from an alleged violation of a constitutional right, a court must ask two questions: first, taken in the light most favorable to the party asserting the injury, whether the facts alleged show the officer's conduct violated a constitutional right; and second, whether the right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). 'If no constitutional right would have been violated were the

allegations established, there is no necessity for further inquiries concerning qualified immunity.'" *Watenza v. Dayton*, 2d Dist. No. 21984, 2008-Ohio-749, ¶ 34, quoting *Saucier*, 533 U.S. at 201.

{¶14} In a joint motion for summary judgment, Officer Howell and Officer Grassnig asserted that Garvey's claims were not supported by the facts. They further argued that even if Garvey suffered some constitutional violation, the officers were immune from liability under the affirmative defense of qualified immunity. In the motion the officers stressed the reasonableness of their actions because Garvey "was resisting arrest."

{¶15} In her response to the motion, Garvey acknowledged that it was her burden to establish that the officers' conduct violated a right so clearly established that any police officer in their positions would have clearly understood that they were under an affirmative duty to refrain from such conduct. *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir.2006). However, she argued that "summary judgment would not be appropriate if there is a factual dispute (i.e., a genuine issue of material fact) involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights." *Poe v. Haydon*, 853 F.2d 418, 426 (6th Cir.1988). She contends that the evidence, when construed in the light most favorable to her, demonstrates that there is a violation of her constitutional rights to be free from excessive force by law enforcement. She further argues that it is clear that individuals have a constitutional right not to be subjected to excessive force during an arrest. *Graham v. Connor*, 490 U.S. 386, 388 (1989). As to whether the totality of the circumstances justified the force used in her arrest, Garvey points to the three factors identified by the United States Supreme Court in determining reasonableness: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the police officers or

others; and (3) whether the suspect actively resisted arrest or attempted to evade arrest by flight. *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir.2001), quoting *Graham*, 490 U.S. at 396. Garvey argues that the alleged crime of unlawful entrustment and disorderly conduct was not a serious enough crime to justify the amount of force used on her. She also contends that it is undisputed that she did not pose a physical threat to either of the officers from the time that she was first placed in the cruiser until she was forcibly removed. She argues that she was not actively resisting arrest or attempting to evade arrest because it was undisputed that only five seconds passed between the time she was asked to get out of the cruiser, to which she responded, "No, no," and when she was forcibly removed from the cruiser.

{¶16} Garvey further asserts that there were genuine issues of material fact that precluded summary judgment in favor of the City of Vermilion. According to her, while the officers were trying to effectuate the arrest, they had control of one of her arms and forcibly removed her from the cruiser. When the officers utilized the "take-down" maneuver, she suffered severe injuries because they failed to control her descent to the pavement. She contends that she did not pose a flight risk as she was in the back seat of a police cruiser, and she was not actively resisting arrest. Finally, Garvey asserts that the force used in removing her from the cruiser, resulting in an orbital blowout fracture, fracture of the maxillary sinus, permanent hypoesthesia of her lower left eyelid and bruising to her arm and neck, was clearly excessive and that the officers were not entitled to qualified immunity.

{¶17} In contrast, the officers contend that Garvey lunged forward as she was being removed from the car. They acknowledged using a "take-down" maneuver to effectuate Garvey's arrest. However, the officers assert that they were reasonable in their actions to extract Garvey from the cruiser because she was resisting arrest. On appeal, Officer Grassnig argues

that his conduct was reasonable, he did not violate Garvey's constitutional rights, and thus, he is entitled to qualified immunity. Specifically, he contends that "Garvey's intoxicated version of [his] conduct has no independent support, is not competent and is therefore, legally insufficient." He points to the officers' sworn affidavits that vehemently deny Garvey's claims and contends that none of the individuals present at the scene corroborated Garvey's version of the events. Officer Grassnig's arguments demonstrate that there is a genuine issue of material fact. He argues that Garvey was "required to submit sufficient credible evidence to support her version of the facts. * * * A mere scintilla of evidence is insufficient; 'there must be evidence on which the jury could reasonably find for the [non-movant].'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Contrary to his arguments, Garvey met this burden. In addition to her own affidavit, she submitted evidence of excessive force from criminologist Dr. George Kirkham, and medical testimony from Dr. Louis P. Caravella. According to Dr. Kirkham, it is common for intoxicated individuals to be initially slow to respond to instructions and commands. Based upon his professional expertise, he questioned the officers' claim that Garvey "lunged forward" as she was being removed from the cruiser, specifically because the officers had control of her arms and removed her from a seated position in the car. He testified that in his experience in evaluating similar incidents, serious head injuries are often produced by reckless take-down maneuvers like the one described in this case. Dr. Caravella's report indicated that Garvey's injuries could not have occurred as described by Grassnig. First, in "lunging forward" he opined that she would have traveled more or less parallel to the ground, and in using her "momentum" in the take-down maneuver, her face would have dragged along the pavement resulting in multiple linear abrasions. Instead, Garvey had "rather stellate" abrasions. Second, Dr. Caravella opined that it would be a normal reflex of an individual falling or being propelled to the ground to turn their

face to one side to avoid a face-first collision with the pavement. This would result in an "orbital rim fracture" rather than a "blow out fracture." In order for Garvey to have sustained the blow out fracture in this case, her head must have been restrained so that it could not move to the side. Finally, to sustain the fracture of the posterior wall of the maxillary sinus, Garvey's neck and head must have been restrained from moving backwards as she fell, and continuous pressure must have been exerted upon her head to force her face forward. This injury, according to Dr. Caravella, could not be caused by the use of "minimal force." This evidence, when viewed in a light most favorable to Garvey, demonstrates that there is a genuine issue of material fact. Accordingly, this argument is without merit.

{¶18} Officer Howell contends on appeal that he is entitled to qualified immunity because Garvey is unable to prove that: (1) he observed or had reason to know that excessive force would be or was being used, and (2) he had both the opportunity and the means to prevent the harm from occurring. *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir.1997); *see also Michaels v. City of Vermilion*, 539 F.Supp.2d 975, 987 (N.D.Ohio 2008). He contends that he had no means or opportunity to prevent any alleged incidents of excessive force. He argues that Garvey "sprang" from the back of the cruiser, and that he was able to assist in guiding her to the ground with "minimal force." Conversely, Garvey argues that Officer Howell enlisted the help of Officer Grassnig even though she had not made threats. According to Garvey, Officer Howell was attempting to de-escalate situation by using verbal techniques, when Officer Grassnig stepped in front of him. Officer Howell simply walked around to the other side of the passenger door and permitted Officer Grassnig to take over the situation. Garvey further argues that Officer Howell took no action to prevent Officer Grassnig from grabbing her and "slamming her to the pavement." Finally, Garvey argues that it is disputed whether Officer Howell physically

assisted in forcibly removing Garvey from the cruiser. This evidence, when viewed in a light most favorable to Garvey, demonstrates that there is a genuine issue of material fact. Accordingly, this argument is without merit.

{¶19} Finally, the officers argue that Garvey's claimed constitutional right is not clearly established. Specifically, Garvey's argument that there was a clear violation of her constitutional rights to be free from excessive force by law enforcement lacks sufficient evidence. Instead, they argue that "the right at issue in this case is whether the use of force while attempting to handcuff an intoxicated suspect who is a safety and flight risk is excessive," and when the evidence is viewed in the light most favorable to Garvey, a reasonable jury could not conclude that "Officer Grassnig and/or Officer Howell used excessive force in removing Garvey from the cruiser and placing her in handcuffs." However, as we concluded above, there are genuine issues of material fact surrounding her allegations of excessive force. As such, this argument is without merit.

{¶20} Because there are genuine issues of material fact, the officers' motion for summary judgment was properly denied. Thus, the first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN HOLDING THAT [] OFFICERS CRAIG HOWELL AND RICHARD GRASSNIG WERE NOT IMMUNE FROM LIABILITY PURSUANT TO REVISED CODE CHAPTER 2744 ON [] GARVEY'S CLAIMS OF ASSAULT AND BATTERY, GROSS NEGLECT, AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS[.]

{¶21} In their second assignment of error, Officers Howell and Grassnig argue that the trial court erred in holding that they were not immune from liability pursuant to R.C. 2744 on Garvey's claims of assault and battery, gross neglect, and intentional infliction of emotional distress. We do not agree.

**{¶22}** Under R.C. 2744.03(A)(6), an officer, acting in his official capacity, is immune from liability for injury unless his actions were "manifestly outside the scope" of his responsibilities, or the officer acted "with malicious purpose, in bad faith, or in a wanton or reckless manner[.]" The officers argue that Garvey failed "to meet her burden and produce evidence that the Officers acted 'with malicious purpose, in bad faith, or in a wanton or reckless manner.'"

**{¶23}** "Malicious purpose" has been defined as "willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through * * * unlawful or unjustified" conduct. *Schoenfield v. Navarre*, 164 Ohio App.3d 571, 2005-Ohio-6407, ¶ 22 (6th Dist.), quoting *Cook v. Hubbard Exempted Village Bd. of Edn.*, 116 Ohio App.3d 564, 569 (11th Dist.1996). The term "bad faith" embraces more than bad judgment or negligence; it is conduct that involves a "dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." *Jackson v. McDonald*, 144 Ohio App.3d 301, 309 (5th Dist.2001), quoting *Jackson v. Butler Cty. Commrs.*, 76 Ohio App.3d 448, 454 (12th Dist.1991), quoting *Slater v. Motorists Mut. Ins. Co.*, 174 Ohio St. 148 (1962), paragraph two of the syllabus. Finally, reckless refers to conduct that causes "an unreasonable risk of harm and is substantially greater than that which is necessary to make his conduct negligent." *Thompson v. McNeill*, 53 Ohio St.3d 102, 104-105 (1990), quoting 2 Restatement of the Law 2d, Torts, Section 500, at 587 (1965).

**{¶24}** We conclude there remains a genuine issue of material fact concerning Officer Grassnig's and Officer Howell's conduct, and thus the trial court did not err in denying the officers the benefit of immunity. If the facts presented by Garvey are found to be credible, a jury could determine that the officers' actions were reckless and that they were aware that their

conduct created an unreasonable risk of physical harm to Garvey. In addition, the facts could demonstrate that the acts were done with a malicious purpose, particularly if Officer Grassnig is found to have pulled Garvey out of the cruiser by the hair, slammed her face into the pavement, and told her, "Now you're going to listen to us." In addition, a genuine issue of material fact remains concerning whether Officer Howell assisted Officer Grassnig in forcibly removing Garvey from the cruiser, as well as whether Howell had reason to know about the excessive force and had the opportunity to prevent the harm from occurring. Thus, the trial court did not err in denying the officers the benefit of immunity in reference to Garvey's claims of assault and battery, gross neglect, and intentional infliction of emotional distress. The second assignment of error is overruled.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED IN DETERMINING [THE] CITY OF VERMILION WAS NOT ENTITLED TO SUMMARY JUDGMENT AS TO [] GARVEY'S FAILURE TO INVESTIGATE CLAIM.

{¶25} In its third assignment of error, the City of Vermilion asserts that the trial court erred in determining that it was not entitled to summary judgment as to Garvey's claim of failure to investigate. We disagree.

{¶26} The City of Vermilion acknowledges that a complaint of failure to investigate police officers for alleged constitutional deprivations or to discipline those officers may give rise to municipal liability under 42 U.S.C. 1983. *See, e.g., Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1247 (6th Cir.1989); *Marchese v. Lucas*, 758 F.2d 181, 188 (6th Cir.1985). However, "the plaintiff 'must demonstrate that the municipal action was taken with "deliberate indifference" as to its known or obvious consequences.'" *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir.2006), quoting *Bd. of County Commrs. v. Brown*, 520 U.S. 397, 407 (1997).

{¶27} On appeal, the City of Vermilion contends that the evidence does not support a conclusion that it failed to investigate the matter or that its investigation demonstrated a policy or custom of deliberate indifference to the rights of citizens. It claims that upon being notified of Garvey's complaint, the chief of police for the City of Vermilion, Chief Kish, began investigating the incident. He concluded that the officers acted appropriately in arresting Garvey.

{¶28} In her response to the City of Vermilion's motion for summary judgment, Garvey argued that there is a policy or custom in Vermilion to permit Officer Grassnig to violate the constitutional rights of the individuals he arrests. From 2004-2006, Officer Grassnig's use of force per number of arrests was 13.24%, the highest by far among the 26 members of Vermilion's police department. The department's average use of force per arrest was 2.21%. In addition, Officer Grassnig received a poor evaluation for his job performance in 2004. Specifically, he received "unsatisfactory" for "[e]mployee keeps temper under control and does not take conflict personally." The comments stated that he "[n]eeds to tone down aggression. Task force has put him on edge with dealing with people." Garvey also averred that since 2005, Officer Grassnig has been named a defendant in three other lawsuits alleging constitutional violations. Finally, she urges that the City of Vermilion failed to follow its manual of procedures when investigating Officer Grassnig. Specifically, a formal complaint was never filed after the incident with Garvey, and no written report of the results or findings was produced. Garvey argues that there were similar failures in prior accusations of excessive force as well. Garvey alleges that the City of Vermilion was deliberately indifferent to the evidence contradicting Officer Grassnig and Officer Howell's justifications for using force to remove her from the cruiser and that the indifference constitutes ratification of the officers' unconstitutional conduct

and subjects the city to § 1983 liability. *Wright v. City of Canton*, 138 F.Supp.2d 955 (N.D.Ohio 2001).

{¶29} We conclude that Garvey submitted sufficient evidence to demonstrate that there is a genuine issue of material fact as to whether the City of Vermilion failed to investigate the matter or that the investigation demonstrated a policy or custom of deliberate indifference to the rights of citizens. The third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED IN DETERMINING [THE] CITY OF VERMILION WAS NOT ENTITLED TO SUMMARY JUDGMENT AS TO [] GARVEY'S FAILURE TO TRAIN CLAIM.

{¶30} In its fourth assignment of error, the City of Vermilion argues that the trial court erred in determining that it was not entitled to summary judgment as to Garvey's claim that it had failed to properly train employees. We do not agree.

{¶31} The City of Vermilion acknowledges that "there are limited circumstances in which an allegation of 'failure to train' can be the basis for liability under 42 U.S.C. §1983." *City of Canton v. Harris*, 489 U.S. 378, 387 (1989). However, to succeed, Garvey must prove the following: (1) the training or supervision was inadequate for the task performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Morrison v. Bd. of Trustees of Green Twp.*, 529 F.Supp.2d 807, 823 (S.D.Ohio 2007), citing *Ellis ex rel. Pendergrass v. Cleveland Mun. School Dist.*, 455 F.3d 690, 700 (6th Cir.2006).

{¶32} On appeal, the City of Vermilion argues that there is no evidence in the record that the training provided to officers by the City of Vermilion is deficient. It further argues that "the only alleged evidence Garvey relied upon in the Trial Court was a single event in Officer

Grassnig's 20 year career." It referred to the poor evaluation from 2004 demonstrating an "unsatisfactory" rating in the area of temper control and not taking conflict personally. The City of Vermilion appears to argue that this evidence alone is not sufficient in comparison to the remainder of his 20-year career. Nonetheless, it raises a genuine issue of material fact as to the City of Vermilion's failure to train an officer and approval of improper conduct that proper training could eliminate. *See Hays v. Jefferson Cty., KY*, 668 F.2d 869 (6th Cir.1982). The City of Vermilion's fourth assignment of error is overruled.

**ASSIGNMENT OF ERROR V**

> THE TRIAL COURT ERRED IN HOLDING THAT [] THE CITY OF VERMILION WAS NOT IMMUNE FROM LIABILITY PURSUANT TO REVISED CODE CHAPTER 2744.

**{¶33}** In its fifth assignment of error, the City of Vermilion argues that the trial court erred in holding that it was not immune from liability pursuant to R.C. 2744.02. However, the record reflects that it failed to raise this argument below. In its motion for summary judgment, the City of Vermilion argued "to the extent [Garvey] has claimed intentional infliction of emotional distress against the City, said claim must fail." It stated that "[t]he Complaint does not evince an allegation of intentional infliction of emotional distress against [the City of] Vermilion. However, any such claim should fail to the extent that one has been made." To the extent that the City of Vermilion argues for the first time on appeal that it is immune from all intentional tort claims, we conclude that it has failed to preserve this argument for our review. "It is axiomatic that a litigant who fails to raise an argument in the trial court forfeits his right to raise that issue on appeal." *Stefano & Assoc., Inc. v. Global Lending Group, Inc.*, 9th Dist. No. 23799, 2008-Ohio-177, ¶ 18, citing *State v. Byrd*, 32 Ohio St.3d 79, 87 (1987). Thus, we limit our review accordingly.

{¶34} According to R.C. 2744.02(A)(1), a political subdivision is not liable in damages in a civil action for loss to persons or property by any act or omission in connection with governmental and proprietary functions of the political subdivision or its employees. The determination of whether governmental immunity under R.C. 2744.02 applies is a question of law to be decided by the court. *Conley v. Shearer*, 64 Ohio St.3d 284, 292 (1992).

{¶35} In determining whether a political subdivision is immune from liability, this Court must engage in a three-tier analysis. *Cater v. Cleveland*, 83 Ohio St.3d 24, 28 (1998). The first tier is the premise under R.C. 2744.02(A)(1) that "[e]xcept as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." (Emphasis omitted.) *Cater*, 83 Ohio St.3d at 28.

{¶36} The second tier involves the five exceptions set forth in R.C. 2744.02(B), any of which may abrogate the general immunity delineated in R.C. 2744.02(A)(1). *Cater*, 83 Ohio St.3d at 28. Lastly, under the third tier, "immunity can be reinstated if the political subdivision can successfully argue that one of the defenses contained in R.C. 2744.03 applies." *Id.*

{¶37} In its motion for summary judgment, the City of Vermilion argued that the Ohio Supreme Court has held that there are no exceptions under the Political Subdivision Tort Liability Act to immunity for intentional torts of intentional infliction of emotional distress. *Hubbard v. Canton City School Bd. of Edn.*, 97 Ohio St.3d 451 (2002), syllabus. On appeal, it argues that the trial court erred in denying its motion for summary judgment because the claim of intentional infliction of emotional distress does not fall within any of the five R.C. 2744.02(B)

exceptions. We agree. *See id* at 453*; Wilson v. Stark Cty. Dept. of Human Servs.*, 70 Ohio St.3d 450 (1994).

**{¶38}** Accordingly, the City of Vermilion's fifth assignment of error is sustained insofar as it argues that the trial court erred in holding that the City of Vermilion was not immune from liability as to the intentional infliction of emotional distress claim pursuant to R.C. 2744.02.

### III.

**{¶39}** The City of Vermilion's fifth assignment of error is sustained in part. Its remaining assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed in part, reversed in part, and remanded for further proceedings.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

CARLA MOORE
FOR THE COURT

CARR, P. J.
DICKINSON, J.
CONCUR.

APPEARANCES:

HILARY S. TAYLOR, SHAWN W. MAESTLE, JULIUS E. TROMBETTO, and MATTHEW C. MILLER, Attorneys at Law, for Appellant.

MARK G. PETROFF and DAVID A. HAMAMEY, II, Attorneys at Law, for Appellee.