[Cite as *Taylor v. Goodyear Tire & Rubber Co.*, 2018-Ohio-2179.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | | |
|---|---|---|
| MARGIE TAYLOR | | C.A. No. 28620 |
| Appellant | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| GOODYEAR TIRE & RUBBER CO., et al. | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellee | | CASE No. AC-2015-10-5075 |

DECISION AND JOURNAL ENTRY

Dated: June 6, 2018

HENSAL, Judge.

{¶1} Margie Taylor, executor of the estate of Russell Young, appeals from the judgment of the Summit County Court of Common Pleas. For the reasons that follow, we affirm in part, and reverse in part.

I.

{¶2} This appeal involves an asbestos case that originated in the Cuyahoga County Court of Common Pleas. In that case, Ms. Taylor brought several claims against Goodyear Tire & Rubber Co. ("Goodyear"), including claims for premises liability, negligent undertaking, and intentional tort. Ms. Taylor's claims were based upon Mr. Young's (her late father) exposure to asbestos while working on aircraft brake linings during his employment with Goodyear Aerospace Corporation ("Aerospace").

{¶3} Relevantly, Goodyear filed motions for partial summary judgment on Ms. Taylor's claims for premises liability, negligent undertaking, and intentional tort. The trial court

granted Goodyear's motions in an entry on the File & Serve docket, which is a separate electronic docket used for asbestos cases. The trial court then journalized those entries with the Clerk of Courts, and included language indicating that "[t]here is no just reason for delay pursuant to Ohio Rule of Civil Procedure 54(B)." Ms. Taylor subsequently moved the trial court to vacate or modify the "no just reason for delay" language. The trial court granted Ms. Taylor's motion in an entry on the File & Serve docket. That entry, however, was never journalized with the Clerk of Courts. The trial court subsequently dismissed the case pursuant to Rule 41(A).

{¶4} Due to the dismissal of certain defendants in the Cuyahoga County case, Ms. Taylor re-filed her action in the Summit County Court of Common Pleas. In her re-filed action, Ms. Taylor brought claims for negligence, premises liability, negligent undertaking, and employer intentional tort against Goodyear. She also brought an additional claim for products liability against Goodyear. Goodyear moved for summary judgment on Ms. Taylor's claims for premises liability, negligent undertaking, and employer intentional tort on the basis of res judicata. Goodyear also moved for summary judgment on Ms. Taylor's claim for products liability. The trial court granted both motions. Ms. Taylor now appeals, raising two assignments of error for our review.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR GOODYEAR TIRE AND RUBBER COMPANY ON RES JUDICATA GROUNDS.

{¶5} In her first assignment of error, Ms. Taylor argues that the trial court erred by granting summary judgment in favor of Goodyear on the basis of res judicata. We review a trial

court's award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Under Civil Rule 56(C), summary judgment is proper if:

> (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶6} The moving party bears the initial burden of informing the trial court of the basis for the motion and pointing to the parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). "To accomplish this, the movant must be able to point to evidentiary materials of the type listed in Civ.R. 56(C)[.]" *Id.* at 292. If the moving party meets this burden, then the nonmoving party bears the burden to offer specific facts demonstrating a genuine issue for trial. *Id.* at 293. "The non-moving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact." *Garvey v. Vermilion*, 9th Dist. Lorain No. 10CA009873, 2012-Ohio-1258, ¶ 12.

{¶7} In its motion for summary judgment, Goodyear argued that the Cuyahoga County Court of Common Pleas granted summary judgment on Ms. Taylor's claims for premises liability, negligent undertaking, and employer intentional tort in three separate journalized entries, all of which contained Rule 54(B) language. Goodyear argued that Ms. Taylor could have appealed those final orders, and that res judicata precluded her from raising those claims in the Summit County Court of Common Pleas.

{¶8} In anticipation of Ms. Taylor's counter-arguments, Goodyear acknowledged that Ms. Taylor subsequently filed a motion to vacate the Rule 54(B) language on those orders, and

that the Cuyahoga County Court of Common Pleas granted her motion in an entry on the File & Serve docket. Goodyear argued that, because the entry granting Ms. Taylor's motion was never journalized, it did not take effect. To that end, Goodyear argued that a trial court speaks only through its journalized entries, and that a judgment on the File & Serve docket is not officially rendered until it is journalized with the Clerk of Courts. In support of its position, Goodyear relied upon the Eighth District's decision in *Shesler v. CONRAIL*, which held that an entry on an asbestos docket is not equivalent to a journalized entry, and that a trial court speaks only through its journalized entries. 8th Dist. Cuyahoga No. 83656, 2004-Ohio-3110, ¶ 20. In doing so, the Eighth District noted that "[a] docket is not the same as a journal." *Id.* at ¶ 17, quoting *State ex rel. White v. Junkin*, 80 Ohio St.3d 335, 337 (1997). Goodyear also argued that the proper procedure for challenging the finality of those judgments was through an appeal, which Ms. Taylor did not pursue.

{¶9} In response, Ms. Taylor argued that the Cuyahoga County Court of Common Pleas' entry granting her motion to vacate the Rule 54(B) language was an effective order regardless of it not being journalized. She also argued that all summary-judgment rulings became moot when the trial court administratively dismissed the case under Rule 41(A). She further argued that, in addition to the lack of finality with respect to the summary-judgment orders, res judicata did not apply because new evidence supporting those claims arose between the dismissal of the Cuyahoga County case and the filing of the Summit County case. Ms. Taylor did not provide any legal authority in support of these positions, nor did she address the Eighth District's precedent in *Shesler*.

{¶10} In granting summary judgment in favor of Goodyear, the trial court determined that, since the Cuyahoga County Court of Common Pleas included Rule 54(B) language in its

summary-judgment orders, Ms. Taylor was required to appeal those orders, which she failed to do. As a result, the trial court held that Goodyear was entitled to summary judgment on the basis of res judicata.

{¶11} On appeal, Ms. Taylor argues that the trial court erred by determining that the Cuyahoga County Court of Common Pleas added Rule 54(B) language to the summary-judgment orders. She argues that Goodyear's counsel, not the trial court, prepared those orders and, therefore, the trial court itself did not add any Rule 54(B) language. She also argues that Goodyear did not consult her when composing the proposed orders, which violated local rules, and that Goodyear's counsel appears to have had ex-parte communications with the trial court. She further argues that she did not receive notice of the summary-judgment orders (journalized with the Clerk of Courts on October 1, 2009 and October 2, 2009) until she received notification from the File & Serve docket on October 28, 2009. Ms. Taylor, however, did not raise these arguments in her brief in opposition to Goodyear's motion for summary judgment at the trial court, and cannot do so for the first time on appeal. *Jones v. Summit Cty. Jobs & Family Servs.*, 9th Dist. Summit No. 27708, 2016-Ohio-4940, ¶ 3.

{¶12} As previously noted, the record reflects that the trial court journalized its summary-judgment orders containing Rule 54(B) language on October 1, 2009 and October 2, 2009. Per Appellate Rule 4(A), she had 30 days to appeal those orders, which she did not do. Instead, she moved to vacate the Rule 54(B) language from those orders on October 29, 2009. A motion to vacate, however, does not toll the time requirements for filing an appeal. *Berlin v. Varney*, 9th Dist. Summit No. 15459, 1992 Ohio App. LEXIS 4157, *3 (Aug. 12, 1992). While the trial court did grant Ms. Taylor's motion to vacate via an entry on the File & Serve docket

during the 30-day period (i.e., on November 2, 2009),[1] the Eighth District's precedent dictates that an entry on an asbestos docket is not equivalent to a journalized entry, and that a trial court speaks only through its journalized entries. *Shesler*, 8th Dist. Cuyahoga No. 28356, 2004-Ohio-3110, at ¶ 20; *see also Junkin*, 80 Ohio St.3d at 337 ("A docket is not the same as a journal."). Despite Ms. Taylor's attempts on appeal to distinguish this case from the facts in *Shesler*, we find her arguments unpersuasive, and determine that the trial court's entry on the File & Serve docket granting her motion to vacate had no effect on Ms. Taylor's obligation to timely appeal the trial court's final, journalized orders. We, therefore, cannot say that the trial court erred in granting summary judgment on the basis of res judicata. Accordingly, Ms. Taylor's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

> THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR GOODYEAR TIRE AND RUBBER COMPANY ON PLAINTIFF'S PRODUCTS LIABILITY CLAIM.

{¶13} In her second assignment of error, Ms. Taylor argues that the trial court erred by granting Goodyear's motion for summary judgment on her claim for products liability. We apply the same standard of review set forth in the preceding assignment of error.

{¶14} We will begin by addressing certain facts. There is no dispute that Mr. Young worked for Aerospace in Plant B, which housed the manufacturing of asbestos containing brake linings during the relevant time period. Plant B consisted of two divisions: the Vinyl Division

---

[1] As previously noted, the trial court journalized its summary-judgment orders on October 1, 2009 and October 2, 2009. Thirty days from those orders fell on a Saturday and Sunday, respectively. Ms. Taylor, therefore, had until the following Monday, November 2, 2009, to file her appeal. *See* App.R. 14(A).

and the Wheel & Brake Division. Per Ms. Taylor's complaint, Mr. Young worked in both divisions, and was "exposed to raw asbestos and asbestos containing products." While there is no dispute that the asbestos containing brake linings were manufactured in Plant B, the parties dispute whether the manufacturing process, which began in the Vinyl Division, continued once the brake linings were transferred to the Wheel & Brake Division for additional work. Further, the parties dispute whether Goodyear or Aerospace manufactured the brake linings, and whether Goodyear had control over the Wheel & Brake Division. With those facts in mind, we proceed with an analysis of Goodyear's motion for summary judgment on Ms. Taylor's claim for products liability.

{¶15} In its motion, Goodyear claimed that Aerospace manufactured the asbestos containing brake linings. Regarding the manufacturing process, Goodyear cited the affidavit of John Reese, a former Aerospace employee, who averred that,

> [p]rior to 1973, brake linings were formed by Goodyear Aerospace employees in Plant B * * *, then brought to the Wheel & Brake Division, which was also in Plant B, where Goodyear Aerospace employees would complete the brake linings by drilling holes and shaping those linings until they were ready to be incorporated as components of the brake assembly.

He also averred that, in 1973, Aerospace moved the function of forming the brake linings from Plant B to a new facility in Berea, Kentucky. He concluded that,

> [r]egardless of whether the brake linings were formed in Plant B * * * or in the Berea facility, the brake linings did not leave the control of their manufacturer, *Goodyear Aerospace*, until they were shipped to the purchaser of the brake assembly.

(Emphasis added.)

{¶16} Goodyear acknowledged that Ms. Taylor claimed that Goodyear, not Aerospace, manufactured the brake linings. It argued, however, that whether Goodyear or Aerospace manufactured the brake linings was irrelevant for purposes of determining whether Ms. Taylor's

products-liability claim failed as a matter of law. In this regard, Goodyear argued that the Ohio Products Liability Act requires a plaintiff to show that the product in question was defective as defined in Revised Code Sections 2307.74 through 2307.77. Goodyear argued that the plain language of those statutory sections provides that the product must have been defective when it left the control of the manufacturer and, thus, not while the product remained in the manufacturing process.

{¶17} In support of its argument, Goodyear relied upon the Third District's decision in *Moeller v. Auglaize Erie Machine Co.*, 3d Dist. Auglaize No. 2-08-10, 2009-Ohio-301. There, a lawnmower manufacturer sent a lawnmower to a subcontractor to perform touch-up paint work so that the lawnmower could then "be brought to a dealer to be sold." *Id.* at ¶ 6. While there, one of the subcontractor's employees sustained injuries when the lawnmower fell on top of his legs and abdomen. *Id.* at ¶ 5. The employee brought a number of claims against the lawnmower manufacturer, including a claim for products liability, and the manufacturer moved for summary judgment. *Id.* at ¶ 2, 9. In granting summary judgment in favor of the manufacturer, the trial court determined that the lawnmower was still in the "manufacturing process" while the subcontractor performed work on it. *Id.* at ¶ 11.

{¶18} On appeal, the Third District affirmed the trial court's decision, holding that, although the manufacturer did not have possession of the lawnmower while the subcontractor performed work on it, the lawnmower remained in the manufacturer's control. *Id.* at ¶ 20, 31. Goodyear concluded that, because Ms. Taylor claimed that Mr. Young was exposed to asbestos during the manufacturing process, her products-liability claim – like in *Moeller* – failed as a matter of law.

{¶19} In response, Ms. Taylor argued that Mr. Young was exposed to asbestos while working in the Wheel & Brake Division. She argued that Goodyear, not Aerospace, manufactured the asbestos containing brake linings in its Vinyl Division and that, by the time they were transferred to the Wheel & Brake Division for assembly, they were finished products that had left the control of the manufacturer (i.e., Goodyear). In support of her position, Ms. Taylor cited deposition testimony from former Aerospace employees who averred that Goodyear manufactured the brake linings in the Vinyl Division.

{¶20} Ms. Taylor also argued that *Moeller* is not dispositive. Specifically, she argued that *Moeller* focused on whether the manufacturer maintained control of the product, not whether the manufacturing process was complete. She argued that, in its motion for summary judgment related to premises liability, Goodyear denied having control over the Wheel & Brake Division.

{¶21} In granting summary judgment in favor of Goodyear, the trial court determined that the record contained no evidence to support the conclusion that the brake linings ever left the control of Goodyear at any time during Mr. Young's alleged exposure. In reaching this conclusion, the trial court adopted the reasoning in *Blakely v. Goodyear Tire & Rubber Co.*, another Summit County Court of Common Pleas case that addressed the same issue and, in relying on *Moeller*, granted summary judgment in favor of Goodyear. Summit C.P. No. AC 2014-07-3155 (Dec. 8, 2015). In *Blakely*, the trial court "presume[d] Goodyear [wa]s the manufacturer[,]" and further "presume[d] Goodyear controlled both the Vinyl Division and the Wheel & Brake Division inside Plant B." In relying upon *Moeller*, the *Blakely* court held that, "[w]hen a product is still being manufactured it cannot be deemed to have left the hands of, or left the control of, the manufacturer."

**{¶22}** Despite Goodyear's arguments, we cannot say that *Moeller* stands for the proposition that a product that is still in the manufacturing process is, as a matter of law, under the control of the manufacturer. While the trial court in *Moeller* relied upon the product still being in the *manufacturing process*, the Third District's holding focused on the manufacturer's *control* under the particular circumstances presented (including the fact that the subcontractor performed the touch-up paint work at the manufacturer's direction). *Moeller* at ¶ 20. This is consistent with what the relevant statutes require. *See* R.C. 2307.74 through 2307.77 (requiring a product to be defective at the time it leaves the control of the manufacturer).

**{¶23}** Even assuming without deciding that a product that is still in the manufacturing process is, as a matter of law, in the control of the manufacturer for purposes of products liability, we are troubled by the trial court's analysis in this case. Specifically, we are troubled by the fact that the parties disputed below – and continue to dispute on appeal – whether Goodyear manufactured the brake linings, and whether Goodyear controlled the Wheel & Brake Division. Yet the trial court, without any explanation or analysis, determined that Goodyear manufactured the brake linings, and that Goodyear controlled the Wheel & Brake Division. It then relied upon those facts to determine that "[t]here is no evidence in the record to support the conclusion that the brake linings ever left the control of Goodyear at any time during Mr. Young's alleged exposure." A trial court, however, cannot weigh the evidence and determine issues of fact when ruling on a motion for summary judgment. *Horner v. City of Elyria*, 9th Dist. Lorain No. 13CA010420, 2015-Ohio-47, ¶ 10.

**{¶24}** Given the arguments and facts presented below, as well as the trial court's analysis of same, we hold that the trial court erred by granting summary judgment in favor of

Goodyear on Ms. Taylor's claim for products liability. Accordingly, Ms. Taylor's second assignment of error is sustained.

## III.

**{¶25}** Ms. Taylor's first assignment of error is overruled. Ms. Taylor's second assignment of error is sustained. The judgment of the Summit County Court of Common Pleas is affirmed in part, and reversed in part.

Judgment affirmed in part,
and reversed in part.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

JENNIFER HENSAL
FOR THE COURT

SCHAFER, P. J.
CALLAHAN, J.
CONCUR.


APPEARANCES:

JESSICA M. BACON, Attorney at Law, for Appellant.

RICHARD D. SCHUSTER and DAMIEN C. KITTE, Attorneys at Law, for Appellee.